NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. UNITED STATES FIDELITY & GUARANTY COMPANY *et al.*, Defendants-Appellants.—NORTHBROOK PROPERTY & CASUALTY INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. UNITED STATES FIDELITY & GUARANTY COMPANY *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 85—2324, 85—2325 cons.

Opinion filed November 25, 1986.

480

Robert L. Kiesler and Duane J. St. Pierre, both of Kiesler & Berman, of Chicago, for appellants.

D. Kendall Griffith, Fritz Huszagh, and H. Anne McKee, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

The issues presented in the two actions for declaratory judgment consolidated here on appeal involve construction of language contained in insurance policies and language contained in additional-insured endorsements. In each case, Northbrook Property & Casualty Insurance Company (Northbrook) had in full force and effect a policy of insurance issued to the construction manager, Schal Associates, Inc. (Schal). In each case, the subcontractor was insured by United States Fidelity & Guaranty Company (USF&G). Each policy of insurance issued to the subcontractor was amended by an additional-insured endorsement which named the construction manager, Schal, as an additional insured. The events leading up to the filing of the declaratory judgment actions are similar.

Schal was the construction manager for the owner in the construction of a multistory office building known as 200 Madison Plaza in Chicago. All of the above-ground concrete work was subcontracted by Schal to Mid-American Concrete Construction Company (Mid-American). William Conroy (Conroy) was an employee of Mid-American and performed services at the site.

Schal also was the construction manager for the owner in the construction of a multistory office building at 200 South Wacker Drive in Chicago. A portion of the work was subcontracted by Schal to Mayfair Construction Company (Mayfair). E. W. Green (Green) was an em-

ployee of Mayfair and performed services at the site.

Both Conroy and Green sustained personal injuries while performing work for their respective employers at the jobsites. Each brought a separate underlying lawsuit against Schal, the construction manager, and others to recover for their injuries alleging violations of the Structural Work Act (Ill. Rev. Stat. 1985, ch. 48, par. 60).

Mid-American and Mayfair obtained a general liability policy from USF&G. An endorsement was added naming Schal as an "additional insured." There is no dispute that the policies were in effect on the date of the accidents and pertained to work performed at the respective jobsites. The USF&G policy provides that Schal is an additional insured "but only with respect to liability out of operations performed for [Schal] by or on behalf of [Mid-American and Mayfair]."

Schal was insured by Northbrook under a general liability policy that provides, in part, that the policy "shall apply only as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except it shall not apply as excess over any policy written as specific excess."

Northbrook tendered the defense of Schal to USF&G in the Conroy and Green actions. USF&G refused to defend Schal on the basis that there was no coverage afforded to Schal under the additional-insured endorsement. Northbrook undertook the defense of Schal in both actions. Declaratory judgment actions by Northbrook and Schal followed.

On December 3, 1984, the trial court entered its final order in the Conroy action. It found that Schal was an additional insured under USF&G's policy and that USF&G was obligated to defend Schal in regard to the Conroy litigation. The court held that USF&G's policy was valid and collectible, and primary insurance, and that Northbrook's policy provides excess insurance to Schal. However, the court found that the costs of Schal's defense in the Conroy action was to be borne equally by USF&G and Northbrook. Finally, the court found that USF&G was estopped to raise any policy defenses for its refusal to defend Schal. USF&G appeals. Northbrook and Schal cross-appeal from that part of the judgment ordering that Northbrook must share in the costs of Schal's defense.

On July 10, 1985, the trial court entered its final order in the Green action. It found that the terms in Northbrook's policy, "valid and collectible," speak to the future insofar as the duty to indemnify is concerned and denied the motion by Northbrook and Schal for summary judgment on the issue of estoppel because it was considered premature. The court held that until the Green action was resolved,

USF&G and Northbrook had a concurrent obligation to defend Schal on an equal basis. USF&G appeals from the court's finding that Schal was an additional insured under its policy and that Schal was entitled to a defense from USF&G. Northbrook and Schal appeal from the denial of their motion for summary judgment on the issue of estoppel and from the order that Northbrook had a concurrent obligation to defend Schal in the action by Green.

## I

■ In both the Conroy and Green actions, USF&G makes the same argument that was presented by Casualty Insurance Company in the Krkjlus action.[1] It accepts the pronouncement of this court in *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091, but urges us to follow *Consolidation Coal Co. v. Liberty Mutual Insurance Co.* (W.D. Pa. 1976), 406 F. Supp. 1292.

The additional-insured endorsement in the instant case is substantially the same as in *Casualty Insurance Co. v. Northbrook Property & Casualty Co.* (1986), 150 Ill. App. 3d 472. There is no reference in the endorsement requiring the fault of the respective subcontractors, Mid-American or Mayfair. Therefore, *Consolidation Coal* is not applicable.

For the same reasons stated in Point I of *Casualty Insurance Co. v. Northbrook Property & Casualty Co.* (1986), 150 Ill. App. 3d 472, 474-76, we conclude that Schal is entitled to a defense by virtue of being an additional insured under the policies issued by USF&G to Mid-American and Mayfair, respectively.

## II

■ Next, USF&G argues that Northbrook had an equal or concurrent obligation to defend Schal and was obligated to share in the cost of the defense of the Conroy and Green actions.

This issue was addressed in *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 358 N.E.2d 914, where the court held that an excess insurer, such as Northbrook, was entitled to recover costs and fees incurred in defending the insured after the primary insurer's refusal to defend and also was entitled to recover any damages paid at least to the extent of the primary insurer's policy.

---

[1]For purposes of briefing and oral argument, the case of *Casualty Insurance Co. v. Northbrook Property & Casualty Co.* (1986), 150 Ill. App. 3d 472, was consolidated with the instant appeal.

Underlying the rule that the primary insurer, and not excess carrier, has the primary duty to defend its insured is the recognition that there is a distinction in the nature of the respective types of coverage. Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability. Excess or secondary coverage, on the other hand, provides coverage whereby liability attaches only after a predetermined amount of primary coverage has been exhausted. (*Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156, 466 N.E.2d 1091; *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 764, 442 N.E.2d 1362.) Thus, where there are both primary- and excess-insurance carriers, the various companies are not covering the same risk; the remote position of an excess insurer greatly reduces its chance of exposure.

USF&G does not dispute that the law places upon the primary insurer the primary duty to defend and pay the costs of that defense up to the limits of its policy. Instead, USF&G argues that the words "other valid and collectible insurance" in Northbrook's excess endorsement renders the determination of whether Northbrook's policy is excess "premature" because, until judgment is rendered in the underlying actions, it cannot be determined whether the policies issued by USF&G are "valid and collectible." We disagree.

The phrase "excess over any other valid and collectible insurance" is standard excess-insurance-clause language. (*Horace Mann Insurance Co. v. Continental Casualty Co.* (1981), 54 N.C. App. 551, 284 S.E.2d 211.) The terms "valid and collectible" are directed to an insurance policy which is legal and valid, as distinguished from one which was procured by fraud or cannot be collected due to insolvency of the company. *Harkavy v. Phoenix Insurance Co.* (1967), 220 Tenn. 327, 332, 417 S.W.2d 542, 544; *Hellman v. Great American Insurance Co.* (1977), 66 Cal. App. 3d 298, 136 Cal. Rptr. 24; *Friedfeld v. Royal Indemnity Co.* (Fla. App. 1964), 167 So. 2d 586, 587, *cert. denied* (1965), 174 So. 2d 30.

The date of the accident is the relevant date to consider in determining whether a policy is "valid and collectible" for purposes of establishing an insurer's duty to defend. The date judgment is entered in the underlying suit, although it may impact on the determination of an insurer's duty to *indemnify,* is irrelevant to the inquiry as to the duty to *defend. Harkavy v. Phoenix Insurance Co.* (1967), 220 Tenn. 327, 332, 417 S.W.2d 542, 544 (holding that the terms "valid and collectible" refer to whether the policy was valid and collectible at the time of the accident); *Friedfeld v. Royal Indemnity Co.* (Fla. App. 1964),

167 So. 2d 586, 588 (holding that the question of whether there was other valid and collectible medical-payments insurance within an excess provision must be determined as of the time of the occurrence).

USF&G does not assert that its policies were not legal and valid when issued, nor does it assert that it was insolvent on the dates of the accidents that give rise to the underlying actions.

■ *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 466 N.E.2d 1091, does not support USF&G's argument that determination of the effect of the phrase "valid and collectible" is premature. *Maryland* involves a question of whether an insurer's duty to *indemnify* is premature where the insurer is not estopped from asserting policy defenses. That is very different than the cases presented here, which involve the duty of USF&G to *defend* Schal and pay the costs of that defense. Unlike the question of indemnification, determination here of whether any of the allegations in the underlying complaints give rise to potential coverage under the policies issued by USF&G, thereby triggering its duty to defend and to pay the costs of that defense, will not determine an issue critical to the determination of the underlying lawsuits. This issue is proper for adjudication.

The trial courts, in Conroy and Green, erred in holding that Northbrook had a concurrent or equal obligation to defend Schal and that the determination of the phrase "valid and collectible" is premature.

### III

■ The duty to defend arises where the insurer has agreed to accept not only the risk of an occurrence but also has agreed to provide a defense to its insured in any legal action which reasonably could invoke the coverage afforded under the policy. The underlying principle is that the duty to defend is broader than the duty to pay. *Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 394, 442 N.E.2d 245; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748, 358 N.E.2d 914.

In cases where an insurer believes a policy does not provide coverage, its options are clear. It must either defend under a reservation of rights or secure a declaratory judgment as to its rights and obligations before trial or settlement of the underlying action. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, *appeal denied* (1980), 81 Ill. 2d 602.) Where the insurer fails to take either course of action, its failure to defend is unjustified and it is estopped from later raising policy exclusions or defenses in a subsequent action by the insured or the insured's subrogee. *Reis v. Aetna*

*Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, *appeal denied* (1980), 79 Ill. 2d 616; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123, *appeal denied* (1964), 28 Ill. 2d 626.

■ In the Green action, USF&G unjustifiably refused to represent Schal. The underlying complaint contains allegations that come within or potentially within the coverage afforded to Schal as an additional insured under the policy of USF&G. USF&G did not defend Schal under a reservation of rights or secure a declaratory judgment that it owed Schal no duty to provide it with a defense. USF&G thus accepted the risk that it would subsequently be found to have owed a defense to Schal. Upon its unjustified refusal, USF&G has breached its policy agreement with Schal. In such circumstances, USF&G is estopped from asserting any defenses to coverage of this claim.

■ USF&G attempts to avoid imposition of estoppel on the basis that Northbrook assumed the defense of Schal in the underlying action and brought a declaratory judgment action. The theory is that since Schal was defended by another insurer (Northbrook), it was not prejudiced by USF&G's refusal to defend. This argument was rejected in *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748-49, 358 N.E.2d 914, in which the court stated:

> "Estoppel arises as a direct result of the insurer's breach of contract. *** The contract becomes no less breached because of the fortuitous existence of another insurer who is willing to meet its own obligations. The thrust of Illinois law places a burden upon the primary insurer rather than the insured or any other party, to fulfill its duty to defend and to take any action necessary to preserve its exclusionary defenses."

USF&G may not avoid the imposition of estoppel for its unjustified refusal to defend Schal in the underlying action.

CONCLUSION

Accordingly, we reverse the judgments of the trial courts in Conroy and Green holding that Northbrook had a concurrent duty to defend Schal and an obligation to share the cost of defense. We also reverse that part of the judgment in Green denying the motion of Schal and Northbrook for summary judgment on the issue of estoppel.

Reversed.

HARTMAN and SCARIANO, JJ., concur.