ROYAL INSURANCE COMPANY, Plaintiff-Appellee, v. PROCESS DE-
SIGN ASSOCIATES, INC., *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—90—2549

Opinion filed October 29, 1991.

Hinshaw & Culbertson and Schiff, Hardin & Waite, both of Chicago (D. Kendall Griffith, Kevin R. Sido, Terrence K. McGrath, Mark C. Friedlander, and Brent J. Graber, of counsel), for appellant Process Design Associates, Inc.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, Kevin R. Sido, and Terrence K. McGrath, of counsel), for appellant General Accident Insurance Company of America.

Kiesler & Berman, of Chicago (Robert L. Kiesler and Patti M. Deuel, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Royal Insurance Company (Royal) brought suit against defendants Process Design Associates, Inc. (Process), and General Accident Insurance Company of America (GA), seeking a declaratory judgment that it was not contractually obligated to provide a defense or insurance coverage to Process. All parties moved for summary judgment; the circuit court granted Royal's motion.

Process and GA appeal the court's award of summary judgment on behalf of Royal and the court's denial of their motions for summary judgment and their motion to reconsider, raising in issue (1) whether Royal failed to make a timely reservation of rights or file a timely declaratory judgment action; (2) whether Royal is estopped from asserting the professional liability exclusion in its policy because it failed to adequately inform Process of an alleged conflict of interest in its defense of Process; and (3) whether Royal owed primary insurance coverage to Process. Royal cross-appeals from that part of the court's judgment ordering that Royal share defense costs.

In February 1981, Process, an engineering firm, entered into a contract with Domtar Industries, Inc., in which it agreed "to provide design engineering services" at one of Domtar's construction sites. During the course of construction, two employees of Diamond Contractors, which furnished tools and labor at the construction site, were injured in two separate incidents at the site and each subsequently brought a separate personal injury lawsuit against Process.

On the dates of the injuries, Process was insured by both Royal and GA. Process' policy with Royal, a comprehensive general liability

insurance policy, provided $1 million coverage for each occurrence and provided for all expenses incurred by Royal in its legal defense of Process. The policy also stated:

> "The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. * * *
>
> * * *
>
> It is agreed that the insurance does not apply to **bodily injury** or **property damage** arising out of the rendering or of the failure to render any professional services by or for the **named insured,** including
>
> (1) the preparation of or approval of maps, plans, opinions, reports, surveys, designs or specifications and
>
> (2) supervisory, inspection or engineering services."

In addition to its comprehensive general liability insurance with Royal, Process was insured by GA with an "architects and engineers professional liability insurance" policy, providing coverage of damage claims arising from Process' professional services. This policy included a $50,000 deductible applicable to each claim, and further stated:

> "This insurance shall be excess insurance over any other valid and collectible insurance available to the Insured whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance specifically applies as excess insurance over the Limits of Liability provided in this Policy."

In December 1983, the two Diamond employees, Nick Babich and Robert Boskovich, each filed separate complaints against Process and others to recover for their injuries, alleging violations of the Illinois Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60) and common law negligence.

In January 1984, Process tendered its defense of both underlying lawsuits to Royal, and Royal accepted. On March 26, 1984, Royal sent a letter to Process stating that Royal was defending Process because the two complaints were based upon negligence. Royal further advised Process, though, that should the complaints be amended to include allegations of professional negligence or should a third-party action be filed, "there may be a question whether or not [Royal] would continue" Process' defense due to the professional liability exclusion in its policy. Royal advised Process to contact its present professional liability insurance carrier about the "possibility" that that carrier would become involved.

On March 29, 1984, GA's agent sent a letter to Process confirming that Royal was properly defending the lawsuits because neither complaint contained allegations of professional negligence.

On May 25, 1984, a handwritten note by a Royal claim representative stated that he told the attorney representing Process "to file a bill of particulars or narrow down allegations so we can tender to" the professional liability carrier.

Royal's claim manager wrote to Process' attorney on February 27, 1985, stating that a substantial amount of discovery needed to be done in conjunction with the lawsuits, and further, its "policy contains a professional liability exclusion, however, by virtue of this contract it would appear that our burden would be that of negligence as opposed to any professional negligence."

On April 16, 1986, another handwritten note by a Royal claim representative stated that the professional liability exclusion was not applicable because the Structural Work Act was involved.

On May 7, 1987, a Royal territorial claims specialist wrote an office memorandum stating that he found it proper, based upon the deposition of Philip Rockenbach, Process' site construction manager, to involve Process' professional liability carrier. The memo stated:

"I find it proper *** to involve the Professional Liability Carrier. The facts as stated by Rockenbach put us 50/50. *** He also relates to his basic responsibility of seeing that the contractors complied with the specifications as drawn up by [Process]. It is my feeling that this relates directly to the wording of the exclusion.

The purchase order to our insured for services covers 'To ensure work done according to drawing and specifications.' This may be a fine line but why not try to involve the other carrier."

Royal again wrote to Process on August 24, 1987, concerning the personal injury lawsuits. In that letter, Royal referred to its March 26, 1984, letter and stated:

"On March 26, 1984, [a Royal employee] wrote to you regarding potential allegations regarding professional services rendered by your company in the course of its operations at Domtar. At that time he requested that you place your professional liability carrier on notice of this incident. ***

Discovery in this case has developed to a point where it becomes clear that there is evidence that the role played by Process Design Associates and Phil Rockenbach appears to come

clearly within the exclusion cited by [Royal's employee] in his original letter of March 26, 1984.

We, therefore, request that you once again place your professional liability carriers on notice and request that they undertake and assume the defense of Process Design Associates ***. Recent court decisions lead us to believe that this litigation should be more properly handled and defended by your professional liability carrier."

In response to Royal's August 24, 1987, letter, GA's agent wrote to Royal stating that it had never received a copy of Royal's letter of March 26, 1984. GA's agent requested a copy of both the letter and the insurance policy issued to Process in order that GA could review the matter.

On April 15, 1988, GA's agent again wrote to Royal; GA refused Royal's tender of the defense of the personal injury lawsuits against Process, stating that

"[W]e believe you are estopped from asserting any policy defenses due to your failure to issue a timely reservation of rights letter or initiate a timely declaratory judgment action. Since you have already defended Process Design for approximately three years, we believe that Process Design would be prejudiced by your withdrawing your defense at this time."

Thereafter, on September 15, 1988, Royal filed its original complaint for declaratory judgment, requesting a finding that Royal afforded no coverage to Process in either of the pending personal injury lawsuits; that Royal be excused from further defense of Process; that GA be estopped from denying coverage for both indemnity and defense; and that GA reimburse Royal for the costs incurred by Royal in defending the underlying lawsuits. Royal's complaint alleged that the work performed by Process at Domtar's site was professional in nature; thus, by virtue of the professional liability exclusion in its policy, Royal provided no coverage to Process in the underlying lawsuits. Royal's complaint further averred that GA wrongfully declined coverage of Process and was therefore estopped from asserting any policy defenses. Additionally, the complaint alleged that GA was the primary carrier for Process.

In response, GA and Process filed motions for summary judgment, arguing that Royal was estopped from asserting any policy defenses because it failed to make a timely reservation of rights. Specifically, Process maintained that Royal's March 26, 1984, letter did not constitute a proper reservation of rights because it did not contain an express disclaimer of liability; it did not inform Process of Royal's in-

tention to defend the lawsuits under a reservation of rights; and the contingencies addressed by the letter (namely, the filing of any amendments or cross-complaints) never occurred. Process further contended that, because it was prejudiced by having been induced to surrender the defense of the lawsuits, Royal should be estopped from denying coverage. Lastly, Process argued that Royal was barred from raising any policy defenses because it failed to inform Process of an existing conflict of interest. In addition to incorporating all the allegations in Process' summary judgment motion, GA's motion alleged that its policy was strictly that of an excess insurer.

Thereafter, Royal filed a cross-motion for summary judgment, asserting that its policy exclusion applied and that GA was estopped from raising any policy defenses based upon its wrongful rejection of Process' defense.

On August 15, 1989, the circuit court denied GA's and Process' summary judgment motion and granted, in part, Royal's summary judgment motion. The court ordered that Royal and GA share defense costs in the two personal injury suits and that Royal continue to defend the suits. The court, however, did not rule as to either Royal's or GA's obligation to indemnify Process.

After the court's order, GA and Process filed a motion to reconsider; both GA and Process contended that documents never before produced by Royal provided a basis for rehearing. The motion to reconsider further stated that the underlying lawsuits had settled, and thus, GA and Process requested a ruling that GA was not responsible for the indemnification of the lawsuits.

Royal then filed a supplemental motion for summary judgment and a response to Process' and GA's motion to reconsider. There, Royal stated that the Babich suit had settled for $78,000 and the Boskovich suit had settled for $54,000; further, Royal stated that it had expended $31,507.77 in defending the suits on behalf of Process. Royal requested that the court deny the motion to reconsider; find that Royal owed no obligation to indemnify Process; and order GA to reimburse it in whole for the settlements.

On August 1, 1990, the circuit court found that Royal properly reserved its rights regarding the defense of the personal injury lawsuits. The court further found that Royal owed no coverage under its policy issued to Process and that GA, as Process' professional liability carrier, owed primary coverage to Process. Correspondingly, the court denied Process' and GA's motion for reconsideration. The court further ordered that Royal and GA share in the defense of the lawsuits; that GA reimburse Royal $15,753.88, half the amount expended by

Royal in defense of the suits; and that GA pay to Royal the amounts of the settlements, totaling $132,000.

Process and GA appeal the court's denial of their summary judgment motions and their motion to reconsider. Royal cross-appeals from that part of the judgment ordering that Royal must share in the costs of Process' defense.

I

Process and GA (jointly, defendants) initially contend that Royal did not properly reserve its rights under its insurance policy. Specifically, defendants maintain that Royal's letter of March 26, 1984, did not constitute a reservation of rights. Defendants further argue that Royal failed to timely file a declaratory judgment action.

Royal responds by maintaining that its March 26, 1984, letter, although admittedly not "award-winning prose," operated as a proper reservation of rights.

■■ In a case such as this, where an insurer believes a policy does not provide coverage, it has two clear options: the insurer must either defend under a reservation of rights, or secure a declaratory judgment as to its rights and obligations "before trial or settlement of the underlying action." (*Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479, 484, 501 N.E.2d 817; *Nandorf, Inc. v. CNA Insurance Cos.* (1985), 134 Ill. App. 3d 134, 136, 479 N.E.2d 988.) The reservation of rights is a means by which the insurer seeks to suspend the operation of estoppel doctrines; when an insurer defends a claim against its insured under a proper reservation of rights, the insured cannot then so easily claim that it was prejudiced by the insurer's conflict of interest. See *Cowan v. Insurance Co. of North America* (1974), 22 Ill. App. 3d 883, 889-90, 318 N.E.2d 315; *Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742.

■■ Such a reservation of rights must, therefore, adequately inform the insured of the rights which the insurer intends to reserve, "for it is only when the insured is adequately informed of the potential policy defense that he can intelligently choose between retaining his own counsel or accepting the tender of defense counsel from the insurer." (*Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d at 896.) Accordingly, bare notice of a reservation of rights is insufficient; the notice must make specific reference to the policy defense which ultimately may be asserted and to the potential conflict of interest. (*Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d at 896; *Popovich v. Gonzales* (1972), 4 Ill. App. 3d 227, 280 N.E.2d 757.)

If the insurer has adequately informed the insured of its election to proceed under a reservation of rights, and the insured accepts the insurer's tender of defense counsel, the insurer has not breached its duty of loyalty and is not estopped from asserting policy defenses. *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d at 896.

In the instant case, Royal urges that its letter of March 26, 1984, operated as a proper reservation of rights. In that letter, Royal informed Process that it was presently defending it through a law firm "by virtue of the fact that the Complaint at the present time is one of negligence." The letter continued, though, to advise Process that "should the Complaint be amended or there be a Third Party Cross-Complaint, in which it would be indicated that professional services were rendered by your company ***, there *may* be a question as to whether or not we would continue with the defense." (Emphasis added.) Royal quoted its policy's professional liability exclusion and stated that if allegations of professional negligence "are included in an Amended Complaint, if filed, we want you to know that there is a *possibility* that your professional liability carrier would become involved." (Emphasis added.)

Although Royal's March 26, 1984, letter informed Process of the policy's professional liability exclusion and Royal's intention of invoking that exclusion if an amended complaint or cross-claim alleging professional negligence were filed, Royal's letter did not unequivocally and clearly inform Process of its intention of reserving that defense under all circumstances. Not only did the letter base the possibility of raising the professional liability exclusion on contingencies which never occurred (the filing of a cross-claim or amended complaint alleging professional negligence), the letter did so in terms which were irresolute. Royal wrote of the "possibility" that the professional liability carrier would become involved and stated that there "may be a question" whether it would continue Process' defense.

In *Popovich v. Gonzales* (1972), 4 Ill. App. 3d 227, 280 N.E.2d 757, the plaintiff brought suit to recover for injuries sustained in a collision between two cars, one of which was the defendant's. The defendant's insurer retained attorneys to defend the action; however, the defendant left town before trial commenced. An investigation by the insurer revealed the defendant's new address; the defendant, however, never responded to communications nor did he appear at the trial. Thereafter, the plaintiff obtained a $4,000 judgment against him and sought payment from his insurer. The defendant's insurer denied liability, pursuant to an exclusion in the policy, because of his failure to cooperate in the defense of the lawsuit.

The *Popovich* court held that the letter sent to the defendant by his insurer, stating that his failure to respond to the insurer's counsel "may be considered" a lack of cooperation under the terms of the policy and thus, the insurer "can" refuse to satisfy the judgment against him, did not constitute an unequivocal reservation of rights, but rather was only a "warning." See *Popovich v. Gonzales*, 4 Ill. App. 3d at 230.

■ Although *Popovich* is not precisely on point, it is illustrative of what is not a proper reservation of rights. Like the letter in *Popovich*, Royal's letter to Process operated only as a warning of future contingencies which, in the instant case, never occurred. Based upon the equivocal nature of Royal's March 26, 1984, letter, we find that Royal did not reserve all its rights and defenses, particularly its professional liability defense.

## II

Defendants next contend that Process was prejudiced by the existence of a conflict of interest, arguing that the professional liability exclusion in Royal's policy specifically exempted Royal from indemnifying Process if the proofs in the underlying cases indicated that Process had acted in its professional capacity. Thus, defendants maintain, Royal's interest would have been served equally by a finding that Process was liable in its performance of professional services as by a finding of no liability. Accordingly, defendants urge that Royal be estopped from invoking its policy defense of professional liability. In response, Royal maintains that no such conflict of interest existed.

■ As stated previously, if the insurer has adequately informed the insured of its intention of reserving its rights, and the insured then accepts the tender of defense counsel, the insurer has not breached its duty of loyalty and is not estopped from denying its obligation to indemnify. (*Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d at 896.) Where there is a conflict of interest, though, an insurer is generally estopped to assert a defense of noncoverage where the insurer undertakes to defend its insured in the underlying suit without reserving its rights. (*Allstate Insurance Co. v. Carioto* (1990), 194 Ill. App. 3d 767, 777, 551 N.E.2d 382. See *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 499-500, 475 N.E.2d 872; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 195, 355 N.E.2d 24.) A conflict of interest which may prejudice the insured exists, if, when comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those

allegations. *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d at 137.

■ Prejudice resulting from a conflict of interest, though, will not be presumed and the burden of establishing it rests with the insured and must be proved by clear, concise, and unequivocal evidence. (*Western Casualty & Surety Co. v. Brochu*, 105 Ill. 2d at 500.) However, if, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage. (*Maryland Casualty Co. v. Peppers*, 64 Ill. 2d at 196.) Nevertheless, an insurer's interest in negating policy coverage does not in itself give rise to a conflict of interest. *Shelter Mutual Insurance Co. v. Bailey* (1987), 160 Ill. App. 3d 146, 513 N.E.2d 490.

In the instant case, defendants urge that Process was prejudiced by Royal's assumption of its defense. Defendants maintain that, not only did Royal not advise Process of its intention of reserving the professional negligence exclusion, but Royal then undertook Process' defense for over three years while attempting to find a way in which Process might be found professionally negligent, thereby relieving Royal of liability. For support, defendants point to the several letters and memos written by Royal which indicate that, throughout its defense of Process, it was working towards discovering a way to invoke its professional liability exclusion, thus immunizing itself from liability to Process. In addition, defendants allege that, for the more than three years that Royal controlled Process' defense, Royal had the opportunity to "mold" discovery in its behalf.

For support, defendants rely upon *Maryland Casualty Co. v. Peppers* (64 Ill. 2d 187, 355 N.E.2d 24), where the court described the conflict of interest which arose in that case:

"In the personal injury action if [the insured] is held responsible, it would be to his interest to be found negligent, which, under the policy of his insurance, would place the financial loss on [the insurer]. On the other hand it would be to [the insurer's] interest to have a determination that [the insured] intentionally injured Mims, which, by the terms of the policy, would relieve [the insurer] of the obligation to pay the judgment." (*Maryland Casualty Co. v. Peppers*, 64 Ill. 2d at 197.)

According to the *Peppers* court, such a conflict created "serious ethical questions" which would prohibit an attorney from representing both the insurer's and the insured's interests. (*Maryland Casualty Co. v. Peppers*, 64 Ill. 2d at 198.) The court in *Peppers*, however, noted that the insured in that case retained his own counsel and was, at all times, rep-

resented by his own attorney. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d at 196.

Unlike the insured in *Peppers*, Process did not retain its own counsel; however, like the insurer in *Peppers*, Royal would have benefitted from a finding that would have adversely affected Process. Specifically, Royal would have benefitted by a finding of professional liability, while such a finding would have subjected Process to noncoverage by Royal and a $50,000 deductible on GA's policy.

Royal responds that no conflict of interest existed because the underlying complaints never made any allegations of professional negligence; thus, Royal maintains, when comparing the allegations of the complaints to the terms of its policy, its interests would not have been furthered by a less than vigorous defense to the specific allegations in the complaints. (See *Nandorf, Inc. v. CNA Insurance Cos.*, 134 Ill. App. 3d at 137.) Royal's actions during the three years that it accepted the defense of Process, however, belie its argument; Royal clearly attempted to tender the defense of Process to GA, specifically by finding a way that Process could be found professionally negligent.

Furthermore, Royal's reliance upon *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 461 N.E.2d 471, in arguing that no conflict of interest existed between Royal and Process, is misplaced. In that case, the insurer exercised its options to defend under a reservation of rights and to file a declaratory judgment action. Distinguishing other fact situations, the *Envirodyne* court stated:

> "A related but different situation may arise when the insurer defends its insured in the underlying action but does not either defend under a reservation of rights or file a declaratory judgment proceeding. If the insurer later contests the issue of coverage, it may be estopped from denying its own liability under the policy. (See *Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742.)" *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 306 n.1.

The facts of the instant case fall squarely within the "different situation" described by the *Envirodyne* court. Here, Royal failed to properly advise Process of its intention to reserve the professional liability defense; further, Royal did not file a declaratory judgment action until after it had defended Process for over three years. Moreover, Royal's defense of Process was tainted by the benefit Royal would derive from a finding that Process was professionally negligent, a finding that would not be salutary for Process. The attorney retained by Royal to represent Process was thus at cross-purposes with Process.

■ In light of the several memos and letters that Royal wrote over the course of the three years it defended the underlying lawsuits, we find that Royal was indeed attempting to hand the defense of Process over to GA through the use of its professional liability exclusion. Consequently, we hold that, based upon Royal's failure to properly reserve its rights and its failure to advise Process of the conflict of interest, Royal is estopped from now claiming that it is not obligated to indemnify Process. See *Apex Mutual Insurance Co. v. Christner* (1968), 99 Ill. App. 2d 153, 240 N.E.2d 742.

### III

Defendants lastly contend, in the alternative, that the court erred in finding that GA owed Process primary insurance coverage. Royal responds by maintaining that GA wrongfully declined Process' coverage and thus is estopped from claiming that its policy provided only excess coverage.

■ Underlying the rule that the primary insurer, and not the excess carrier, has the duty to defend its insured, is the recognition that there is a distinction in the nature of the types of coverage. Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability; excess insurance provides coverage whereby liability attaches only after a predetermined amount of primary coverage has been exhausted. *Northbrook Property & Casualty Insurance Co. v. United States Fidelity & Guaranty Co.* (1986), 150 Ill. App. 3d 479, 483, 501 N.E.2d 817; *Maryland Casualty Co. v. Chicago & North Western Transportation Co.* (1984), 126 Ill. App. 3d 150, 156, 466 N.E.2d 1091.

Royal essentially contends that GA knew Process was an engineering firm and thus, knew that professional negligence likely was invoked by the underlying suits. Accordingly, Royal argues that GA is estopped from asserting that it is the excess insurance carrier because it was on notice that it should defend Process. Royal, however, fails to explain why, if it was so apparent that Process' actions at the construction site were based upon the performance of its professional duties, Royal did not advise Process of its intention to reserve that defense or institute declaratory judgment proceedings.[1]

---

[1]Royal's further contention that, because GA accepted Process' tender of the defense of another personal injury case which arose out of a different accident at the Domtar construction site, it should have accepted the tender of the defense of the two underlying lawsuits, is meritless.

In the instant case, the underlying complaints alleged facts which required Royal to defend Process. (*La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928 ("An insurer which contracts to defend its insured must defend any action brought against the insured if the complaint sets forth allegations that bring the claim within or potentially within the risks covered by the policy").) The complaints were never amended nor were third-party complaints ever filed prior to settlement. It was only after discovery that Royal attempted to shift the responsibility of Process' defense to GA. Because Royal failed to reserve its professional liability defense and because of the apparent conflict of interest with Process, it cannot now argue that it was not the primary insurer. Accordingly, the circuit court erred in finding that GA's policy afforded primary coverage.

Because we find that, based upon Royal's failure to properly reserve its rights or to notify Process of the conflict of interest, the circuit court erred in not granting defendants' motions for summary judgment, we need not address the issue raised by Royal's cross-appeal.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the cause to the circuit court with orders to grant GA's and Process' motions for summary judgment.

Reversed and remanded with directions.

HARTMAN and McCORMICK, JJ., concur.