# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*American Family Mutual Insurance Co. v. Westfield Insurance Co.*, 2011 IL App (4th) 110088

---

| | |
|---|---|
| Appellate Court Caption | AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. WESTFIELD INSURANCE COMPANY, as Subrogee of Central Supply and as Subrogee of Thomas Wells; and SHANNON DENNIS, a Minor, by PATRICK DENNIS, Her Natural Parent and Guardian, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0088 |
| Argued | August 10, 2011 |
| Filed | November 16, 2011 |
| Rehearing denied | December 23, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant insurer obtained a judgment against defendant minor based on a finding that she negligently caused the fire and the minor was insured under a policy issued by plaintiff to the minor's paternal grandparents, with whom she resided, the trial court erred in entering summary judgment against plaintiff insurer in its action seeking a declaration that it was not obligated to indemnify the minor for the judgment in favor of defendant insurer, since the doctrine of collateral estoppel did not estop plaintiff from asserting policy defenses, including the defense that the intentional-injury exclusion in the policy precluded coverage, and the reservation-of-rights letter plaintiff sent to the insured was too premature to be a proper reservation of rights. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 09-MR-147; the Hon. Lee Ann S. Hill, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Richard A. Chapin (argued), of Chapin & Long, P.C., of Champaign, for appellant. |
| | Robert Ostojic (argued), of Leahy, Eisenberg & Fraenkel, Ltd., of Chicago, for appellee Westfield Insurance Company. |
| | Scott A. Ruksakiati (argued), of Vanek, Vickers & Masini, P.C., of Chicago, and Stacey E. Lynch, of Dorris Law Firm, PC, of Bloomington, for appellee Shannon Dennis. |
| Panel | JUSTICE COOK delivered the judgment of the court, with opinion. Justices Turner and Steigmann concurred in the judgment and opinion. |

**OPINION**

¶ 1    On September 12, 2005, codefendant Shannon Dennis, a minor, was convicted of criminal damage to property for recklessly setting fire to the Central Supply Company in Bloomington, Illinois. 720 ILCS 5/21-1(1)(b) (West 2004). At the time of the incident, Shannon was insured under a farm-ranch policy issued to her paternal grandparents by plaintiff, American Family Mutual Insurance Company (American Family).

¶ 2    On October 24, 2006, codefendant Westfield Insurance Company (Westfield), as subrogee of Central Supply Company, filed suit against Patrick Dennis, as natural parent and guardian of Shannon, a minor, for damages stemming from the fire. American Family retained counsel and provided a defense to Shannon. Prior to Westfield filing suit, American Family sent a reservation-of-rights letter to Patrick. On May 7, 2009, the trial court found Shannon negligently caused the Central Supply Company fire and awarded Westfield damages.

¶ 3    On May 14, 2009, American Family filed a complaint for declaratory judgment seeking a judicial determination that it is not obligated to indemnify Shannon for the judgment entered against her and in favor of Westfield. In response, Shannon filed a motion for

summary judgment alleging that American Family (1) was collaterally estopped from asserting that its policy's intentional-injury exclusion provision applied and (2) sent an improper reservation-of-rights letter. The trial court granted the motions. We reverse and remand.

¶ 4                                    I. BACKGROUND

¶ 5        In July 2004, Shannon and two boys found hundreds of matchbooks in a Dumpster located outside the Coachman Motel in Bloomington, Illinois. At the time, Shannon was nearing her thirteenth birthday. She resided with her paternal grandparents and father. On July 24, 2004, Shannon and the boys were lighting the Coachman Motel matches and throwing them at each other as well as on the ground. While playing with the matches, the minors walked by the Central Supply Company. A match was thrown through a cracked window at the Central Supply Company property and the property caught on fire.

¶ 6        Central Supply Company was insured by Westfield. As a result of the fire, Westfield paid to or on behalf of Central Supply Company $467,235.36.

¶ 7        In 2005, Shannon was charged with arson (720 ILCS 5/20-1 (West 2004)) and criminal damage to property recklessly by fire (720 ILCS 5/21-1(1)(b) (West 2004)) relating to the Central Supply Company fire. On September 12, 2005, Shannon was convicted of criminal damage to property.

¶ 8        Shannon was insured under a farm-ranch policy issued to her paternal grandparents by American Family. The policy covered Shannon, because at the time of the incident she was a resident of her paternal grandparents' household. The policy was effective from October 26, 2003, to October 26, 2004.

¶ 9        On June 29, 2006, Westfield sent to American Family a copy of a complaint it planned to file against Patrick, as natural parent and guardian of Shannon, a minor, on account of the fire. Following receipt of the document, James Keane, an in-house attorney for American Family, sent a reservation-of-rights letter to Patrick. The letter was sent on September 29, 2006. In the letter, American Family provides that its policy's intentional-act exclusion provision may limit or eliminate coverage for damages stemming from the fire. The letter set forth the policy's intentional-act exclusion provision. The provision states in relevant part: "11. Intentional injury. We will not pay for damages due to bodily injury or property damage expected or intended from the standpoint of the insured."

¶ 10       On October 24, 2006, Westfield filed suit against Patrick, as natural parent and guardian of Shannon, a minor. American Family retained counsel, at its expense, and provided a defense to Shannon.

¶ 11       On May 7, 2009, the trial court found Shannon negligently caused the fire. The court awarded Westfield $465,735.36 plus costs of $725. The following day, American Family denied indemnity coverage to Shannon.

¶ 12       On May 14, 2009, American Family filed a complaint for declaratory judgment seeking a judicial determination that it is not obligated to indemnify Shannon for the judgment entered against her and in favor of Westfield. In response, Shannon filed a motion for

summary judgment as to her second and sixth affirmative defense as set forth in her answer to American Family's complaint for declaratory judgment. Shortly thereafter, Westfield filed a motion to adopt and join in Shannon's motion for summary judgment. In the second affirmative defense, Shannon alleges that American Family is collaterally estopped from asserting that the intentional-injury exclusion provision in its policy precluded coverage. In her sixth affirmative defense, Shannon claims that American Family sent an improper reservation-of-rights letter. After a hearing, on September 10, 2010, the trial court awarded summary judgment as to Shannon's second and sixth affirmative defense. The court found that American Family was collaterally estopped from asserting that the intentional-injury exclusion provision applied, because "all three prongs of [c]ollateral [e]stoppel exist here and any other result would lead to inconsistent results on identical facts." The court also determined that the reservation-of-rights letter was sent so prematurely "that the defendant could not possibly be properly informed as to her rights under a proper reservation of rights, and any potential for conflict which would exclude American Family from indemnification of its insured."

¶ 13    This appeal followed.

¶ 14                                  II. ANALYSIS

¶ 15    On appeal, American Family argues that the trial court erred in granting summary judgement to Shannon and Westfield, because (1) the doctrine of collateral estoppel does not estop it from asserting policy defenses and (2) the letter it sent to Patrick on September 29, 2006, was a proper reservation of rights.

¶ 16                             A. Collateral Estoppel

¶ 17    Whether the doctrine of collateral estoppel applies is a question of law that we review *de novo*. *In re A.W.*, 231 Ill. 2d 92, 99, 896 N.E.2d 316, 321 (2008). The doctrine of collateral estoppel prevents the relitigation of issues resolved in earlier causes of action. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849 (2001). For collateral estoppel to apply, the following requirements must be met:

> "(1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White*, 216 Ill. 2d 23, 38, 833 N.E.2d 834, 843 (2005).

¶ 18    This case is similar to *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 732 N.E.2d 1094 (2000) (*Leverton II*). In *Leverton II*, State Farm defended its insured under a reservation of rights in a lawsuit alleging the insured had struck the plaintiff with a beer bottle. The jury found for the plaintiff and awarded damages. We held that the jury verdict did not collaterally estop State Farm from arguing the insured's acts were intentional and excluded from coverage. *Leverton II*, 314 Ill. App. 3d at 1087, 732 N.E.2d at 1099. We noted that it was impossible for the jury to find that the acts were intentional because the

plaintiff "voluntarily dismissed the count alleging 'willful and malicious' assault and battery, leaving only the negligence count at issue." *Leverton II*, 314 Ill. App. 3d at 1083, 732 N.E.2d at 1096. The same is true in this case. The jury had only a negligence count before it. "It is well-settled that in order for a previous adjudication to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the former action." *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 895, 318 N.E.2d 315, 325 (1974). Because the issue decided in the prior adjudication is not identical with the one presented in the suit before us, there is no collateral estoppel.

¶ 19                                          B. Reservation of Rights

¶ 20       The trial court also granted summary judgment on the basis that American Family sent its reservation-of-rights letter prior to the filing of Westfield's subrogation complaint, and so far in advance of Shannon's service that "she could not possibly be properly informed as to her rights under a proper reservation of rights, and any potential for conflict which would exclude American Family from indemnification of its insured." The letter was sent September 29, 2006, advising Shannon's father and legal representative, Patrick Dennis, that Westfield was threatening to file suit. In late June 2006, Westfield had sent American Family a courtesy copy of the complaint to be filed. The reservation-of-rights letter advised that preliminary investigation by American Family indicated there may be circumstances that would limit or eliminate coverage under the subject policy, making specific reference to the intentional-injury exclusion. Westfield's complaint was filed 25 days later, on October 24, 2006, and served on Patrick on December 14, 2006. There is no requirement that a reservation-of-rights letter be sent after the filing of the complaint, although a second letter might be required if the filed complaint raised new issues, not the case here. We agree with American Family that the better rule is that the reservation-of-rights letter be sent earlier, rather than later, if that is possible.

¶ 21       An insurer has two options when it believes that the liability from a claim against its insured will not be covered by its insurance policy: (1) defend the suit under a proper reservation of rights or (2) seek a declaratory judgment that there is no coverage. *Employer's Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150, 708 N.E.2d 1122, 1134-35 (1999). If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, then the insurer is estopped from raising policy defenses to coverage. *Ehlco Liquidating Trust*, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135. Where there is a conflict of interest between the insurer and the insured, the insurer may not undertake the defense of the insured itself. Nevertheless, the insurer remains bound under the insurance policy to provide the insured with a defense and, therefore, must permit the insured to be represented by counsel of its own choosing. Under those circumstances, the insurer then must reimburse the insured for the reasonable cost of defending the action. *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co.*, 408 Ill. App. 3d 173, 181, 941 N.E.2d 291, 299-300 (2010) (citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 198-99, 355 N.E.2d 24, 31 (1976)).

¶ 22       A reservation of rights must adequately inform the insured of the rights the insurer

intends to reserve, because it is only when the insured is adequately informed of the potential policy defense that the insured can intelligently determine whether to retain his or her own counsel or accept the tender of defense counsel from the insurer. *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 973, 582 N.E.2d 1234, 1239 (1991). Bare notice of a reservation of rights is insufficient; the notice must specifically reference the policy defense that ultimately may be asserted by the insurer and the potential conflict of interest. *Royal*, 221 Ill. App. 3d at 973, 582 N.E.2d at 1239.

¶ 23    A conflict of interest that may prejudice the insured exists if, when comparing the allegations of the complaint to the policy terms, the interest of the insurer would be furthered by providing a less than vigorous defense to those allegations. *Royal*, 221 Ill. App. 3d at 975-76, 582 N.E.2d at 1240. However, "an insurer's interest in negating policy coverage does not in itself give rise to a conflict of interest." *Royal*, 221 Ill. App. 3d at 976, 582 N.E.2d at 1240-41. The insured has the burden of proving prejudice from a conflict of interest by clear, concise, and unequivocal evidence. *Royal*, 221 Ill. App. 3d at 976, 582 N.E.2d at 1240.

¶ 24    In *Royal*, the appellate court found an insurance company was estopped from asserting a policy defense in a declaratory-judgment proceeding, because the insurance company failed to properly reserve its rights and to adequately inform the insured of the existence of a potential conflict of interest. *Royal*, 221 Ill. App. 3d at 978, 582 N.E.2d at 1242. The court held that the insurer created a conflict of interest when it undertook to defend its insured while attempting to show that the insured was liable for professional negligence, which was not covered under the policy. *Royal*, 221 Ill. App. 3d at 976-77, 582 N.E.2d at 1241-42. The insurer would have benefitted from a finding adverse to its insured, a finding of professional negligence. *Royal*, 221 Ill. App. 3d at 978, 582 N.E.2d at 1242. That is not the case here. Both American Family and the insured would have profitted from a finding that the insured was not negligent. Conflicts have been found where the underlying complaint asserts claims that are covered, as well as others that the insurer is required to defend but asserts are not covered by the policy. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 522 N.E.2d 611, (1988). Shannon's conduct could not have been found intentional in the underlying action here.

¶ 25    James Keane, an in-house attorney for American Family, discussed a Westfield settlement offer with Steven Morris, the defense attorney provided by American Family. In a January 6, 2009, file note concerning Westfield's settlement offer of $400,000, Keane states that "American Family would be better off taking its chances at trial to see if a jury or judge would award the entire amount. I told Steve [Morris] that I would settle the case if it could settle for $100,000. However, I told him I would not offer that and not to convey that position specifically to the plaintiff's attorney." Westfield argues that Keane refused to consider any settlement offer on Shannon's behalf because of his loyalty to American Family's interests. It appears, however, that Shannon, also, was better off rejecting the offer. The decision whether to settle belongs to the insured. Shannon's settlement of the case for $400,000 would not have prevented American Family from denying coverage. Perhaps American Family could have agreed to abandon its reservation of rights and thereby settled the claim for a lesser amount, but it was not obligated to do so. An insurer has a duty to act in good faith in responding to settlement offers, for example where the third party has offered

to settle for an amount less than the policy limits, but that duty only exists where there is coverage under the policy. *Chandler v. American Fire and Casualty Co.*, 377 Ill. App. 3d 253, 256-57, 879 N.E.2d 396, 399 (2007). An insured is only entitled to indemnity for losses that actually fall within the terms of the insurance policy. Where the insured settles an underlying lawsuit, it must demonstrate that it settled an otherwise covered loss to recover the settlement. *Santa's Best Craft, L.L.C.*, 408 Ill. App. 3d at 183, 941 N.E.2d at 301.

¶ 26                                    III. CONCLUSION

¶ 27        For the foregoing reasons, we reverse the trial court's judgment and remand for further proceedings.

¶ 28        Reversed and remanded.