# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Moehring v. Illinois Labor Relations Board, State Panel, 2013 IL App (2d) 120342**

---

| | |
|---|---|
| Appellate Court Caption | ANN MOEHRING, Petitioner, v. THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, and THE CHIEF JUDGE OF THE SIXTEENTH JUDICIAL CIRCUIT, Respondents. |
| District & No. | Second District<br>Docket No. 2-12-0342 |
| Filed | April 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from petitioner's unfair labor practice complaint alleging that she was terminated from her position as a probation officer because of her union activities, the Illinois Labor Relations Board, State Panel, properly dismissed petitioner's complaint based on its determination that the criteria for deferral to the arbitrator's decision in a grievance arbitration hearing finding that petitioner was terminated for just cause were satisfied, since the arbitrator considered and made findings on the issue of antiunion animus, and the arbitration proceedings were not "clearly repugnant to the purposes and policies" of the Illinois Public Labor Relations Act. |
| Decision Under Review | Petition for review of order of Illinois Labor Relations Board, State Panel, No. S-CA-10-241. |
| Judgment | Affirmed. |

| Counsel on Appeal | Steven T. Mann, of Law Office of Steven T. Mann, of Warrenville, for petitioner. |
| | |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for respondents. |
| | |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal involves the direct review, pursuant to section 11(e) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/11(e) (West 2010)) and Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994), of a decision by the Illinois Labor Relations Board, State Panel (Board), to dismiss an unfair labor practice complaint brought by petitioner, Ann Moehring, against her former employer, the Chief Judge of the Sixteenth Judicial Circuit (Chief Judge). While her unfair labor practice complaint was pending before the Board, Moehring participated, pursuant to the terms of a collective bargaining agreement, in a grievance arbitration hearing at which the central issue was whether the Chief Judge had just cause to terminate Moehring's employment as a Kendall County probation officer. The arbitrator ruled in the Chief Judge's favor. Subsequently, the Board dismissed Moehring's unfair labor practice complaint, having determined that the criteria for deferral to the arbitrator's decision were met. On appeal, Moehring contends that, because the arbitrator was not presented with the issues raised in her unfair labor practice complaint, the Board's decision to defer to the arbitration award was improper. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    Moehring was employed as a Kendall County probation officer from August 2003 until October 5, 2009, when her employment was terminated. During the period of Moehring's employment, all Kendall County probation officers were covered under a collective bargaining agreement between the Chief Judge and the General Chauffeurs, Salesdrivers, and Helpers, Local Union No. 330 (union), which was the exclusive representative of a collective bargaining unit consisting of the Kendall County probation officers and other court services employees. In May 2007, Moehring became a member of the union, and, thereafter, she participated in union activities. According to her unfair labor practice charge, which Moehring filed with the Board on March 31, 2010, Moehring became the "unofficial office

union steward" by, among other things, passing out union membership cards, being the office's union point of contact, serving on the union's "Quality of Work Life Committee," and participating in union elections and negotiations. She further alleged that, after she became involved with the union, her supervisors began treating her differently from other employees and increased her workload to an unmanageable level. Moehring contended that her supervisors "unjustly disciplined" her and, ultimately, used the discipline to justify terminating her employment. The charge included a multipage list of events and observations that purportedly revealed the supervisors' antiunion animus.

¶ 4 On November 23, 2010, after conducting an investigation of Moehring's unfair labor practice charge pursuant to section 11(a) of the Act (5 ILCS 315/11(a) (West 2010)), the Board's executive director issued a complaint against the Chief Judge. The complaint alleged that Moehring had engaged in the following protected union activities: (1) between 2007 and 2009, Moehring had served as a union steward; (2) in late 2008, Moehring had acted as the union's observer during a representative election; (3) Moehring had participated in negotiations for a successor collective bargaining agreement; and (4) Moehring had filed numerous grievances on behalf of unit members and herself. The complaint further alleged that, in retaliation for Moehring's protected union activities, and in an effort to discourage union membership, the Chief Judge had terminated Moehring's employment, in violation of sections 10(a)(1) and 10(a)(2) of the Act (5 ILCS 315/10(a)(1), (a)(2) (West 2010)).

¶ 5 The Board's executive director assigned Moehring's unfair labor practice complaint to an administrative law judge (ALJ) for hearing. On June 24, 2011, before the ALJ had conducted a hearing, the Chief Judge filed a motion to dismiss the complaint on the basis that deferral to the grievance arbitration award, which the arbitrator had issued on June 13, 2011, was appropriate. The motion alleged that, pursuant to the terms of the collective bargaining agreement, the union, on Moehring's behalf, and the Chief Judge had participated in a three-day grievance arbitration hearing. At issue during the arbitration hearing was whether there was just cause for Moehring's termination, as well as for earlier two-day and five-day suspensions,[1] as article XII of the collective bargaining agreement required.[2] The Chief Judge contended that at the hearing Moehring had presented evidence of her union activities and had argued, in part, that her supervisors' antiunion animus had motivated their decisions to discipline and, ultimately, to terminate her. Furthermore, the Chief Judge pointed out, in addition to concluding in the 32-page arbitration award that there was just cause for Moehring's suspensions and termination, the arbitrator found as follows:

"I have carefully reviewed the evidence in this case and while it does appear that [Moehring] was involved in various [u]nion activities, there is no substantial and

---

[1]The details of the events leading to the suspensions and discharge are not relevant to the issue of whether postarbitration deferral was appropriate; therefore, we will not discuss them. We will discuss the testimony presented at the arbitration hearing only to the extent that it is pertinent to our analysis.

[2]Article XII of the agreement provided, in pertinent part, "The [e]mployer shall not discharge or suspend any employee except for just cause."

reasonable correlation between her [u]nion activities and the disciplines imposed upon her. I cannot find that there is any nexus between [Moehring's] [u]nion activities and the disciplines imposed."

Because the arbitration award addressed Moehring's allegations that antiunion animus motivated her termination, the Chief Judge argued, the Board should defer to the arbitration award and dismiss Moehring's unfair labor practice complaint.

¶ 6   After additional briefing, on August 31, 2011, the ALJ issued a recommended decision and order in which she concluded that deferral to the arbitration award was appropriate. The ALJ stated that the Board follows the "*Spielberg* standard" (*Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080 (1955)) to resolve the issue of postarbitration deferral. Under that standard, it is proper for the Board to defer to an arbitration award where (1) the unfair labor practice issues have been presented to and considered by the arbitrator; (2) the arbitration proceedings appear to have been fair and regular; (3) all parties to the arbitration agreed to be bound by the award; and (4) the arbitration is not clearly repugnant to the purposes and policies of the Act. The ALJ concluded that all four *Spielberg* factors had been met. On that basis, the ALJ recommended that the Board dismiss Moehring's unfair labor practice complaint.

¶ 7   Pursuant to section 1200.135(b) of the Board's rules (80 Ill. Adm. Code 1200.135(b) (2003)), Moehring filed exceptions to the ALJ's recommended decision and order. On February 22, 2012, the Board issued its written decision and order, in which it accepted the ALJ's recommendation and deferred to the arbitration award, dismissing Moehring's unfair labor practice complaint. The Board rejected Moehring's argument that the record of the arbitration proceedings "did not support the arbitrator's framing of the issues, findings[,] and conclusion," reasoning that Moehring's argument would have required the Board to look beyond the four *Spielberg* factors. The Board stated, "In determining whether *Spielberg* deferral is appropriate, we do not examine the arbitration record to determine if it supports the arbitrator's findings." Here, the Board reasoned, the arbitrator "clearly did address the unfair labor practice issue, and the transcript reveals that [Moehring's] representative had indeed raised the issue before the arbitrator in its opening argument." The Board further noted, "Whether [Moehring] had at the arbitration hearing presented all the evidence [she] could muster in support of [her] argument is of no moment." Moehring timely filed a petition for administrative review by this court.

¶ 8                                          ANALYSIS

¶ 9   Moehring contends that it was improper for the Board to defer to the arbitrator's decision and to dismiss her unfair labor practice complaint. Moehring's primary argument is that deferral was improper because she did not raise the issue of antiunion animus before the arbitrator or present evidence in support of her position on that issue. She also contends that any finding by the arbitrator on the issue of antiunion animus was unsupported by the record of the arbitration proceedings. The Chief Judge contends that Moehring did raise the issue of antiunion animus during the arbitration hearing and that, regardless of whether Moehring was successful in presenting sufficient evidence to support her position, the arbitrator

considered and ruled on the issue. The Chief Judge contends that deferral was proper under these circumstances.

¶ 10    Sections 10(a)(1) and 10(a)(2) of the Act provide, in pertinent part, that it is an unfair labor practice for an employer or its agents "to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act" (5 ILCS 315/10(a)(1) (West 2010)) or "to discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization" (5 ILCS 315/10(a)(2) (West 2010)). An employee who files an unfair labor practice charge against an employer for discharge based upon the employee's protected union activity must show by a preponderance of the evidence that the discharge was motivated by the employer's antiunion animus. *North Shore Sanitary District v. Illinois State Labor Relations Board*, 262 Ill. App. 3d 279, 287 (1994). Once the employee meets this burden, the burden then shifts to the employer to show that the discharge was based on *bona fide*, nonpretextual, legitimate business reasons. *North Shore*, 262 Ill. App. 3d at 287. Where the employer is able to establish that its discharge decision was based in part on legitimate business reasons, in order to prevail the employer must demonstrate by a preponderance of the evidence that it would have discharged the employee despite the employee's union involvement. *North Shore*, 262 Ill. App. 3d at 287. Here, rather than address these issues at a hearing on Moehring's unfair labor practice complaint, the Board deferred to the arbitrator's decision in accordance with section 11(i) of the Act. See 5 ILCS 315/11(i) (West 2010) (permitting the Board to resolve an unfair labor practice charge by deferring to a grievance arbitration award).

¶ 11    Neither party disputes that the Board had the authority under the Act to defer to the arbitration award; however, the parties dispute whether it was proper for the Board to do so. Both parties agree that the "*Spielberg* standard" governs this issue. As the ALJ stated in her recommended decision and order, under the *Spielberg* standard it is proper for the Board to defer to an arbitration award where (1) the unfair labor practice issues have been presented to and considered by the arbitrator; (2) the arbitration proceedings appear to have been fair and regular; (3) all parties to the arbitration agreed to be bound by the award; and (4) the arbitration is not clearly repugnant to the purposes and policies of the Act. *Alton Firefighters Ass'n, IAFF Local 1255*, 22 PERI ¶ 102 (ILRB State Panel 2006) (citing *Spielberg*, 112 N.L.R.B. 1080); *Brown*, 16 PERI ¶ 3010 (ILRB Local Panel 1999)). Moehring raises no argument concerning either the second or the third *Spielberg* factor. Thus, we will limit our discussion to whether the first and fourth *Spielberg* factors were met.

¶ 12    Both Moehring and the Chief Judge agree that the question of whether it was proper for the Board to defer to the arbitrator's decision presents a mixed question of fact and law and that we should apply the "clearly erroneous" standard of review. "Mixed questions of fact and law are 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). A reviewing court will reverse

an agency's decision on a mixed question of fact and law only when the decision is clearly erroneous, which is "when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *American Federation*, 216 Ill. 2d at 577-78.[3]

¶ 13    Moehring argues that the Board erred in determining that the first *Spielberg* factor was met, because no unfair labor practice issue was presented to the arbitrator. She points out that, in the union's posthearing brief submitted to the arbitrator, it listed the issues to be decided as follows: (1) "Was [Moehring] disciplined for just cause?"; (2) "If so, was termination the appropriate progressive discipline?"; and (3) "If not, what is the appropriate remedy?" Moehring also cites the arbitrator's written decision, which listed the issue as, "Did the [e]mployer have just cause to issue a 2-day [s]uspension, a 5-day [s]uspension[,] and a [d]ischarge to [Moehring]?" She also points out that at no point during its arguments before the arbitrator did the union reference any unfair labor practice or any provision of the Act, including section 10(a)(1) or 10(a)(2).

¶ 14    The Chief Judge maintains that the first *Spielberg* factor was met. The Chief Judge references the arbitrator's finding that "there [was] no substantial and reasonable correlation between [Moehring's] [u]nion activities and the disciplines imposed upon her." The Chief Judge also cites the union's opening statement made at the arbitration hearing, in which the union stated:

> "[Moehring] was an outspoken participant on the [u]nion bargaining team for the current agreement signed in August of 2009, which included discussions over excessive workloads.
>
> She also circulated membership cards among the fair share[4] participants to change their status and was on various [u]nion committees. Management commented that she could get more done if she was not so [u]nion involved and kept track of her attendance at [u]nion negotiations because they took her away from work.
>
> It is against this backdrop that the instances of conduct culminating in discharge are reviewed ***."

The Chief Judge contends that the union's opening statement invited the arbitrator to address the issue of antiunion animus. The Chief Judge also quotes the following paragraph from the

---

[3]We note, however, that the case law is less than clear on which standard of review applies to the question of whether postarbitration deferral is appropriate. In this court's only published opinion addressing the issue of postarbitration deferral, we applied the abuse-of-discretion standard, although we did so without any analysis or explanation of the applicable standard. See *North Shore*, 262 Ill. App. 3d at 296 (holding that the Board's refusal to defer to arbitration awards "did not constitute an abuse of discretion"). While we apply the "clearly erroneous" standard in the present case, we nevertheless note that we would reach the same result were we to apply the abuse-of-discretion standard.

[4]According to the collective bargaining agreement, a "fair share" employee is a nonunion member who is covered by the agreement and who, in lieu of paying union dues, shares in the costs of the collective bargaining process, contract administration, and the pursuit of matters affecting the wages, hours, and conditions of employment.

union's posthearing brief submitted to the arbitrator:

> "[Moehring] joined the [u]nion on March 23, 2007. Prior to then, aside from one officer, everyone in the office was fair share. She became the unofficial office union steward by (1) passing out union membership cards; (2) passing out dues receipts and literature; (3) being the union point of contact in the office; (4) answering co-workers' union questions; (5) being elected to the Quality of Work Life Committee ***; (6) becoming the negotiation representative (Fall of 2008); (7) typing meeting minutes of negotiation sessions and distributing them to bargaining unit members; (8) creating, typing[,] and editing a [u]nion newsletter; (9) representing the [c]ircuit at federal mediation (Spring of 2009). Management informed her they were not happy with the time spent out of the office for [u]nion negotiations, surveilling her [u]nion activity and keeping track of her time."

The Chief Judge contends that the purpose underlying this detailed description of Moehring's union activity must have been to suggest to the arbitrator that there was a retaliatory motive behind her discharge.

¶ 15    In support of her argument that the first *Spielberg* factor was not met, Moehring cites *Alton Firefighters*, *Brown*, and *North Shore*. In *Alton Firefighters*, the Board determined that its executive director had properly dismissed an unfair labor practice charge filed by a union on behalf of two firefighters, because the factors for postarbitration deferral under *Spielberg* had been met. Regarding the first *Spielberg* factor, the union in *Alton Firefighters* argued that deferral was improper, because the arbitrators' awards did not include factual findings or analyze the employees' rights under the Act. In rejecting the union's argument, the Board noted that, while deferral generally is improper where an arbitrator has not made factual findings with regard to the crucial allegations of an unfair labor practice charge, "so long as the issues were presented to the arbitrator, deferral is appropriate even though the award does not explicitly resolve those issues." The Board in *Alton Firefighters* further reasoned that the transcripts from the arbitration proceedings reflected that the union had referenced the employer's purported antiunion animus, as well as the relatedness of the two employees' arbitrations (which were conducted separately), all of which permitted the arbitrator to consider whether the two firefighters' discharges demonstrated antiunion animus. *Alton Firefighters*, 22 PERI ¶ 102.

¶ 16    In *Brown*, the Illinois Local Labor Relations Board (Local Board) rejected a recommended decision and order that would have ruled that postarbitration deferral under *Spielberg* was proper. Relying on the first *Spielberg* factor, the Local Board remanded the charge to its executive director for further investigation, reasoning that there was "no dispute" that the arbitration award had not directly addressed or resolved the charging party's contention that the actions taken against her were in retaliation for her protected union activities. The Local Board also noted that it was unable to determine whether or to what extent facts relating to the alleged retaliation had been submitted to the arbitrator, as the parties had not provided it with a transcript of the arbitration proceedings. *Brown*, 16 PERI ¶ 3010.

¶ 17    In *North Shore*, we affirmed a decision by the Board to deny postarbitration deferral. The

union in *North Shore*, which represented several discharged employees, filed unfair labor practice charges with the Board, alleging that the discharges were motivated by antiunion animus. *North Shore*, 262 Ill. App. 3d at 285. The union also filed grievances on behalf of several of the employees, and an arbitrator, in individual arbitration hearings, determined that each of the employees had been discharged for just cause. *North Shore*, 262 Ill. App. 3d at 285. The Board refused to defer to the arbitration awards and, ultimately, determined that the employer had engaged in unfair labor practices by discharging the employees in retaliation for their protected union activities. *North Shore*, 262 Ill. App. 3d at 286, 295-96. On appeal from the Board's decision, the employer argued, in part, that the Board erred in refusing to defer to the arbitration awards. *North Shore*, 262 Ill. App. 3d at 295-96. We rejected the employer's argument, noting that deferral is improper where an arbitrator's decision has not made a factual finding with regard to a crucial allegation of an unfair labor practice charge. *North Shore*, 262 Ill. App. 3d at 296. We reasoned that the issue of antiunion animus was never raised in the individual arbitration hearings, each of which was "limited solely to the contract question of whether the [employer] had just cause to discharge the employee based upon a particular isolated set of facts." *North Shore*, 262 Ill. App. 3d at 296. We further reasoned, "None of the arbitral decisions addressed or considered the pattern of retaliation which was the subject of the unfair labor charges before the Board." *North Shore*, 262 Ill. App. 3d at 296.

¶ 18        Although Moehring purports to cite *Alton Firefighters* in support of her argument that the first *Spielberg* factor was not met, *Alton Firefighters* clearly supports the opposite conclusion. Here, as in *Alton Firefighters*, the transcript of the arbitration hearing reveals that the union referenced the issue of antiunion animus before the arbitrator. As the portions of the record cited by the Chief Judge reveal, the union referenced the issue in its opening statement and in its posthearing brief submitted to the arbitrator. The union discussed Moehring's union activities and described how Moehring's supervisors kept track of her attendance at union meetings and recommended that she limit her involvement with the union in order to remedy her backlog of work. The union stated, "It is against this backdrop that the instances of conduct culminating in discharge are reviewed," which can be interpreted only as an argument that antiunion animus motivated Moehring's discharge.

¶ 19        Furthermore, the arbitration hearing transcripts contain a significant amount of testimony by Moehring describing her union activities and her supervisors' purported scrutinizing of her activities. This consideration further supports following *Alton Firefighters* and renders *Brown* distinguishable, because, in *Brown*, the Board was unable to determine whether evidence of antiunion animus had been presented to the arbitrator, since neither party supplied it with a transcript of the arbitration hearing. Here, during the union attorney's direct examination of Moehring at the arbitration hearing, the following exchange occurred:

"Q. *** Now, had it ever been suggested to you in the past that you curtail your [u]nion committee activities in order to address your workload?

A. Yes, it had.

Q. Okay. Tell me when and on what occasions?

A. Well, I can think of 2 off the top of my head. There was a discussion that

executive director Jim Mueller had in front of my business rep [*sic*] Nick Moisa and in front of director Tina Varney ***. And basically he had said he knew I was behind on my workload and he made a comment about there had been discussion about no more, I was not allowed to attend anymore [*sic*] committee meetings until the workload was caught up. And I said does that include negotiations which, was either like the next day or 2 [*sic*], it was that same week. And he said I wouldn't if I were you. And then there was another–there was a memo that Emily [Kwak, a supervisor,] sent me that said–

Q. Okay. Before we get to that. Did you attend those [u]nion meetings anyway?

A. Yes, I did.

Q. And you didn't receive any kind of discipline as a result of that?

A. Not–no.

Q. *** You started to saying [*sic*] something about a memorandum?

A. There was a memo that Emily sent that said I should not attend any future committee involvement [*sic*] until I caught up with my backlog."

Later, during the union attorney's redirect examination of Moehring, another union-related exchange took place:

"Q. *** [D]id you learn that management actually kept track of the time you spent in [u]nion negotiations or in committee meetings?

A. Yes, I did.

Q. Okay. And how did you learn that?

A. It was in my personnel file. After I had been filed [*sic*], I received a copy of everything that Tina [Varney] had been documenting about me and there was a typed up form that Tina had completed.

Q. All right. And do you know what period of time span [*sic*] was covered by that form?

A. It looks like all of–I'd have to look at it again but it looked like from the start of my involvement with the [u]nion."

Also during the arbitration hearing, Moehring testified to the increased scrutiny she felt that she received from supervisors. For example, during cross-examination by the Chief Judge's attorney, Moehring testified that "the scrutinization" she was referring to was "the 5,273 pages in [her] personnel file in which [Varney] was watching [her] and having other supervisors watch [her] on work time and off work time." Moehring testified that another example of the increased scrutiny was Varney's requirement that Moehring file a grievance any time she wanted any problem resolved. Moehring testified, "Other staff could go to [*sic*] and ask a question and get an answer, get a swift answer. When I asked a question they would say if you want it resolved, put in a grievance." Moehring's testimony clearly supports the conclusion that at the arbitration hearing the union and Moehring presented evidence that was relevant to the issue of antiunion animus.

¶ 20    Both *Alton Firefighters* and *Brown* are distinguishable for another reason as well. Not only did the union and Moehring reference the issue of antiunion animus before the

-9-

arbitrator, and present evidence relevant to that issue, but the arbitrator also made factual findings and ruled on the issue, unlike the arbitrators in *Alton Firefighters* and *Brown*. As stated above, the arbitrator in this case found as follows:

"I have carefully reviewed the evidence in this case and while it does appear that [Moehring] was involved in various [u]nion activities, there is no substantial and reasonable correlation between her [u]nion activities and the disciplines imposed upon her. I cannot find that there is any nexus between [Moehring's] [u]nion activities and the disciplines imposed."

While Moehring contends that the arbitrator's finding was not supported by the record of the arbitration proceedings, she cites no case or Board decision, and we have found none, that holds that a court applying the *Spielberg* standard should look to whether an arbitrator's decision was supported by the evidence. Rather, the case law and Board decisions applying the *Spielberg* factors hold that we are to look only to whether "the issues were presented to the arbitrator" (*Alton Firefighters*, 22 PERI ¶ 102) and to whether the arbitrator made "a factual finding with regard to a crucial allegation" of the unfair labor practice complaint (*North Shore*, 262 Ill. App. 3d at 296; *Alton Firefighters*, 22 PERI ¶ 102; *Brown*, 16 PERI ¶ 3010). Here, the crucial allegation of the unfair labor practice complaint was that Moehring's employer discharged her in retaliation for her participation in protected union activities. The arbitrator made a factual finding with regard to this allegation when he determined that there was no nexus between Moehring's union activities and her discharge. We also reject Moehring's argument that the arbitrator's framing of the issue as whether there was just cause for Moehring's termination should require us to overlook that the arbitrator nevertheless did address the issue of antiunion animus.

¶ 21        Moehring nevertheless argues that, as in *North Shore*, we cannot say that the arbitrator's decision addressed a crucial allegation of her unfair labor practice complaint, because the focus of the arbitration hearing was on whether there was just cause for Moehring's suspensions and discharge. Moehring contends that the arbitrator was unable to consider her employer's "pattern of retaliation" (*North Shore*, 262 Ill. App. 3d at 296), which was the subject of her unfair labor practice charge before the Board. However, *North Shore*, in which the unfair labor practice charges involved numerous employees, all of whom were discharged within a short period of time following a period of intense union negotiations (*North Shore*, 262 Ill. App. 3d at 289), is distinguishable. Here, Moehring's unfair labor practice complaint did not allege that any other employees were discharged in retaliation for participating in protected union activities. Thus, unlike in *North Shore*, where the purported pattern of retaliation against several employees could not have been (and was not) addressed in individual grievance arbitration hearings, any pattern of discrimination against Moehring individually could have been (and, as discussed above, was) addressed in Moehring's arbitration hearing.

¶ 22        Moehring also contends that deferral was improper because the arbitrator's factual findings did not address all of the allegations contained in her unfair labor practice charge, which, as stated above, contained a multipage list of events and observations that purportedly revealed her employer's antiunion animus. However, as the Chief Judge points out, we need not consider whether the arbitrator's factual findings resolved the allegations contained in

Moehring's unfair labor practice *charge* but only whether they resolved the allegations contained in the unfair labor practice *complaint* issued by the Board's executive director following his investigation into Moehring's charge pursuant to section 11(a) of the Act. The unfair labor practice complaint represented those allegations that the Board's executive director found "involve[d] a dispositive issue of law or fact." 5 ILCS 315/11(a) (West 2010). The crucial allegation of the unfair labor practice complaint was that Moehring's employer discharged her in retaliation for participating in protected union activities. The arbitrator's factual findings did address this allegation.

¶ 23    Moehring nevertheless contends that, at a hearing on her unfair labor practice complaint, she could have presented evidence related to the allegations contained in her unfair labor practice charge in order to "shed light on" the issues raised in the complaint. While this may be true, it does not alter the fact that the ultimate issue at a hearing on her unfair labor practice complaint would have been whether her *termination* was in retaliation for her protected union activities. The arbitrator's factual findings directly addressed this ultimate issue.

¶ 24    Moehring also asserts, for the first time in her reply brief, that the Chief Judge's motion to defer to the arbitration award was untimely under section 1220.65 of the Board's rules (80 Ill. Adm. Code 1220.65 (2003)), because it was filed more than 25 days after the Board's executive director issued the unfair labor practice complaint. Moehring has forfeited this argument, because she did not raise it before the Board and did not raise it in her opening brief. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."). We also note that the Chief Judge filed the motion to defer less than two weeks after the arbitrator issued the written award.

¶ 25    In sum, after reviewing the record of the arbitration proceedings, we conclude that the Board's determination that the first *Spielberg* factor was met was not clearly erroneous. The record of the arbitration proceedings reveals that not only did the union and Moehring reference the issue of antiunion animus before the arbitrator, and present evidence relevant to that issue, but the arbitrator considered the issue and made factual findings with regard to it.

¶ 26    Moehring also asserts that the Board erred in determining that the fourth *Spielberg* factor was met. The fourth factor is whether the arbitration was "clearly repugnant to the purposes and policies of the Act." *Alton Firefighters*, 22 PERI ¶ 102. The sole argument Moehring offers in support of her position is that "[c]learly an arbitration award with no basis in fact is at odds with the Act." Moehring again cites *Alton Firefighters* and *Brown*; however, as discussed above, those cases do not stand for the proposition that a court applying the *Spielberg* standard is required to determine whether an arbitrator's decision is supported by the record.[5] Rather, we are to look only to whether "the issues were presented to the

_____

[5]This is consistent with the well-established rule of limited judicial review of an arbitrator's decision and our very limited ability to modify or vacate it, even for mistakes of fact or law. See *Galasso v. KNS Cos.*, 364 Ill. App. 3d 124, 130-31 (2006); *Sloan Electric v. Professional Realty &*

-11-

arbitrator" (*Alton Firefighters*, 22 PERI ¶ 102) and to whether the arbitrator made "a factual finding with regard to a crucial allegation" of the unfair labor practice complaint (*North Shore*, 262 Ill. App. 3d at 296; *Alton Firefighters*, 22 PERI ¶ 102; *Brown*, 16 PERI ¶ 3010). Thus, we must reject Moehring's argument that the arbitration was "clearly repugnant to the purposes and policies of the Act" on this basis.

¶ 27 We conclude that the Board's determination that the fourth *Spielberg* factor was met was not clearly erroneous. Notably, article V of the collective bargaining agreement between the union and the Chief Judge provided:

> "Neither the [e]mployer nor the [u]nion shall interfere with the right of employees covered by this [a]greement to become or not become members of the [u]nion and there shall be no discrimination against any such employees because of lawful [u]nion membership or nonmembership activity or status."

Article V essentially provided the same protections as sections 10(a)(1) and 10(a)(2) of the Act, upon which Moehring's unfair labor practice complaint was based. We also note that the union cited article V of the collective bargaining agreement in its posthearing brief submitted to the arbitrator. Thus, while the union may not have cited sections 10(a)(1) and 10(a)(2) of the Act during the arbitration hearing (a point that Moehring emphasizes), the union did cite the portion of the collective bargaining agreement that paralleled those sections. In sum, because the collective bargaining agreement provided protections nearly identical to those the Act provides, and because the arbitrator determined that Moehring's discharge was not in retaliation for her protected union activities, the Board's conclusion that the arbitration was not "clearly repugnant to the purposes and policies of the Act" was not clearly erroneous.

¶ 28                                     CONCLUSION

¶ 29 For the reasons stated, we affirm the decision of the Illinois Labor Relations Board, State Panel, to defer to the arbitration award and to dismiss Moehring's unfair labor practice complaint.

¶ 30 Affirmed.

---

*Development Corp.*, 353 Ill. App. 3d 614, 621 (2004).