2019 IL App (1st) 181007

FIRST DIVISION
October 21, 2019

No. 1-18-1007

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| EREK SLATER, | ) | |
| | ) | |
| Petitioner, | ) | Petition for Administrative |
| | ) | Review of the Illinois |
| v. | ) | Labor Relations Board, |
| | ) | Local Panel |
| THE ILLINOIS LABOR RELATIONS BOARD, | ) | |
| LOCAL PANEL and THE CHICAGO TRANSIT | ) | No. L-CA-16-017 |
| AUTHORITY, | ) | |
| | ) | |
| Respondents. | ) | |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Walker concurred in the judgment and opinion.

**OPINION**

¶ 1 Petitioner Erek Slater appeals from a decision of the Illinois Labor Relations Board, Local Panel (Board), which found that the Chicago Transit Authority (CTA) did not violate the Illinois Public Labor Relations Act (Act) (5 ILCS 315/1 *et seq.* (West 2014)) when the CTA withdrew permission for Amalgamated Transit Union, Local 241 (Union) to use an office on CTA property. For the reasons that follow, we affirm the Board's decision.

¶ 2 I. BACKGROUND

¶ 3 This appeal involves two unfair labor practices charges brought under section 10 of the Act, which provides in relevant part

"(a) It shall be an unfair labor practice for an employer or its agents:

(1) to interfere with, restrain or coerce public employees in the exercise of the rights guaranteed in this Act or to dominate or interfere with the formation, existence or administration of any labor organization or contribute financial or other support to it; provided, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(2) to discriminate in regard to hire or tenure of employment or any term or condition of employment in order to encourage or discourage membership in or other support for any labor organization." *Id.* § 10(a)(1), (2) (West 2014).

¶ 4    In January 2015, Slater, a bus operator employed by the CTA, was elected as a union representative at the CTA's North Park bus garage. In November 2015, Slater, in his individual capacity only, filed amended unfair labor charges with the Board asserting in relevant part that the CTA "evicted" the Union and him from an office in the North Park garage. Slater alleged that the CTA retaliated against him by removing his access to the office after he had a disagreement with CTA management during a safety meeting, in violation of section 10(a)(1) and (a)(2) of the Act.[1]

¶ 5    The Board's executive director issued a complaint for hearing. The complaint asserted that on March 7, 2015, the CTA held a safety meeting at the North Park garage attended by Slater, along with other Union members and CTA general manager Elizabeth Williams. At the conclusion of the meeting, Slater introduced himself as a union representative and began to

_____

[1]Slater also alleged that the CTA improperly removed union fliers from the North Park garage, and that CTA management restricted an "off-clock union meeting." Neither of these charges are relevant to the issues before us in this appeal.

speak out about safety issues on behalf of the Union and its members. Williams told Slater that he did not have permission to speak and threatened him with insubordination. After the meeting, Williams allegedly contacted Tom Sams, the president of the Union, saying that Slater would be fired if he was not removed from his union duties at the North Park garage. Sams removed Slater from his union duties. Slater was reinstated to his union duties on April 6, 2015. On April 9, 2015, the CTA ordered the Union and Slater to vacate the office space at the North Park garage, which the Union had been using for five months. The Board's complaint for hearing alleged that by ordering Slater to vacate the office, the CTA "has discriminated against public employees in order to discourage membership in or support for the Union, in violation of Sections 10(a)(2) and (1) the Act," and "restrained or coerced public employees in the exercise of rights guaranteed under the Act, in violation of Section 10(a)(1) of the Act." Neither Slater's charge nor the Board's complaint made any allegation that use of the office was a condition of employment, or that the Union demanded that the CTA bargain in good faith any changes to the Union's access to the office.

¶ 6    The CTA answered the Board's complaint and the matter proceeded to a four-day hearing before an administrative law judge (ALJ). After the hearing, the ALJ issued a recommended decision and order. The ALJ found in relevant part that the CTA violated section 10(a)(1) of the Act by evicting the Union from the North Park garage office in retaliation for Slater engaging in protected activity, and that the CTA failed to present a legitimate business reason for such action. The ALJ further found that the CTA violated section 10(a)(2) and (a)(1) of the Act because the CTA removed the Union's access to the office with the specific intent of discouraging union support. The CTA filed an exception with the Board.

¶ 7    On April 17, 2018, the Board issued its written decision and order. The Board rejected the ALJ's finding that the CTA violated sections 10(a)(1) and 10(a)(2), and found that because the Union did not have any proprietary interest in the office, the CTA's decision to deny the Union and Slater continued access to the office was not an adverse employment action. The Board found that the Union had use of the North Park garage office space starting in December 2014. The Union did not have a key to the office; CTA management maintained the office key, and the Union had to ask the CTA for permission to use the office. CTA management would unlock the door for Union representatives, and would lock the door when the Union was done using the office. The Union used the office to speak to membership in private, interview grievants, and to store records in a filing cabinet. The Union did not use the office on a daily basis. The CTA used the office for storage, as well as to conduct selections of bus runs, which occurred approximately six times per year, with each selection lasting several days. In early 2015, a CTA facilities manager asked Gilberto Hernandez, the administrative manager at the North Park garage, for office space closer to his area of responsibility, which included the area in which the North Park garage was located. Shortly after April 6, 2015, Hernandez told Slater that the Union could no longer use the office. The Board concluded that the Union did not have exclusive use of the office, and further found that neither the Union nor Slater had any propriety interest in the office space, as the CTA had never given the Union a designated office. The Board found the Union's use of the office space "was temporary and permission to use it was given at the convenience of CTA management." Therefore, the Board concluded that the "elimination of the Union's use of office space is not an adverse action" that could sustain an unfair labor charge under section 10(a)(1) or (a)(2) of the Act.

¶ 8       Slater filed a timely petition for review in this court from the Board's final decision. 5 ILCS 315/11(e) (West 2016); 735 ILCS 5/3-113(a), (b) (West 2018); Ill. S. Ct. R. 335 (eff. July 1, 2017).

¶ 9                                    II. ANALYSIS

¶ 10      At the outset, we note that portions of Slater's appellate brief violate Illinois Supreme Court Rule 341 (eff. May 25, 2018). First, Rule 341(h)(2) requires an appellant to include "[a]n introductory paragraph stating (i) the nature of the action and of the judgment appealed from and whether the judgment is based upon the verdict of a jury, and (ii) whether any question is raised on the pleadings and, if so, the nature of the question." The introductory paragraph should not include lengthy recitations of fact and should not contain argument. Here, Slater's "Nature of the Case" section consists of four dense paragraphs spanning nearly three pages, and is argumentative. Both the length and argumentative nature of Slater's introductory paragraph violate Rule 341(h)(2) (see *Artisan Design Build, Inc. v Bilstrom*, 397 Ill. App. 3d 317, 321 (2009) (finding that a two-page introductory statement containing argument violates Rule 341(h)(2))), and does not aid this court in understanding or resolving Slater's claims. Second, Slater's statement of facts is replete with argument, in violation of Rule 341(h)(6), which requires a statement of facts to be "stated accurately and fairly without argument or comment." Ill. S. Ct. R. 341(h)(6). Finally, the argument section of Slater's brief routinely asserts factual statements with no citations to the record, or asserts factual statements that are not supported by the citations to the record that he makes, which both constitute violations of Rule 341(h)(7).

¶ 11      Our supreme court's rules governing appellate briefs are mandatory. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 7. A party's failure to comply with the rules runs the risk that this court will strike the offending portions of a noncompliant brief, or, in rare cases,

dismiss an appeal for serious rule violations. *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). We advise Slater's counsel that rule violations should be avoided in future appellate briefs, and that future violations may result in serious adverse consequences.

¶ 12    On appeal, Slater identifies four issues for review. First, he contends that the Board erred by failing to evaluate his charge under a section 10(a)(1) "reasonable employee" standard after it found that no adverse employment action occurred to satisfy section 10(a)(2) of the Act, and that the Board erred by concluding that the CTA's "eviction" of him and the Union from the office was a not violation of section 10(a)(1) of the Act. Second, he argues that the Board applied a clearly erroneous interpretation of the Act when it determined that no adverse employment action occurred. Third, he argues that the Board's final decision was inconsistent with the record. Finally, he argues that undisputed facts in the record support his charges, warranting reversal.

¶ 13    In appeals from administrative agencies, our standard of review depends on whether an issue involves a question of law, fact, or a mixed question of law and fact. We review the final administrative decision of the Board, not the recommended decision and order of the ALJ. *Pundy v. Department of Professional Regulation*, 211 Ill. App. 3d 475, 486 (1991). The Board's factual findings are *prima facie* true and correct, and will not be disturbed unless the findings are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). It is not our function to reweigh the evidence or make any independent determinations on issues of fact. *Id.* We review *de novo* an administrative agency's conclusions of law (*Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005)), as well as issues of statutory construction (*Village of North Riverside v. Illinois Labor Relations Board, State Panel*, 2017 IL App (1st) 162251, ¶ 15). We review mixed questions of law and fact under the clearly erroneous standard. *AFM Messenger*

*Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 391 (2001). "A mixed question of law and fact is one 'involv[ing] an examination of the legal effect of a given set of facts.' " *Id.* (quoting *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). We may affirm the Board's decision on any basis supported by the record, regardless of the Board's specific basis or reasoning for its decision. *Ball v. Board of Education of the City of Chicago*, 2013 IL App (1st) 120136, ¶ 27.

¶ 14     Here, to the extent that we must construe the Act to determine how Slater's charge should be examined, our review is *de novo*. *Comprehensive Community Solutions*, 216 Ill. 2d at 471; *Village of North Riverside*, 2017 IL App (1st) 162251, ¶ 15. In keeping with well established principles, the Board's findings of fact will only be overturned if those findings are against the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 88. Finally, the Board's ultimate determination that the CTA did not commit an unfair labor practice is a mixed question of law and fact, which we review for clear error. *AFM Messenger Service*, 198 Ill. 2d at 391.

¶ 15     We first address Slater's argument that the Board erred by applying a "proprietary interest" test to determine whether the CTA's removal of the Union's access to the office space was an adverse employment action. He argues that the Board did not cite any authority to support its application of a "proprietary interest" test, and that the Board failed "to even attempt an analysis of the benefits to the bargaining unit of confidential conversations with union representatives or engage [*sic*] in protected concerted activity, or access to the [U]nion file cabinet located in the [office.]" Slater, however, cites no authority to support his argument that

the Board ordinarily applies—or should apply—a "benefits to the bargaining unit" test to determine whether an employer's action constitutes an adverse employment action for the purposes of an unfair labor charge under section 10(a)(1) or (a)(2).

¶ 16    Section 10(a)(1) of the Act "broadly protects public employees in exercising their rights under the Act." *Pace Suburban Bus Division of Regional Transportation Authority v. Illinois Labor Relations Board, State Panel*, 406 Ill. App. 3d 484, 496 (2010). In order to state a *prima facie* violation of section 10(a)(1) of the Act, a charging party must show that "(1) they were engaged in statutorily protected activity; (2) their employer knew of the nature of such conduct; and (3) their employer acted against them for discriminatory reasons[.]" *Village of North Riverside*, 2017 IL App (1st) 162251, ¶ 44. To establish a section 10(a)(1) violation, the charging party is not required to establish that the employer acted with an antiunion animus, but proof of antiunion animus will satisfy the third prong. *Pace Suburban Bus Division of Regional Transportation Authority*, 406 Ill. App. 3d at 495-96.

¶ 17    Where a charging party alleges that the employer's retaliation against the charging party for engaging in protected activity violated both section 10(a)(1) and section 10(a)(2), the charging party necessarily contends that the employer's motives for an adverse action were improper. In such circumstances, the alleged section 10(a)(1) violation is derivative of the section 10(a)(2) violation, and the Board follows the framework applied to section 10(a)(2) claims to determine whether an employer took an adverse action for an illegal motive. *Id.* at 494 (citing *Mulligan*, 11 PERI ¶ 3008 (ILLRB 1995)). In order to establish a *prima facie* violation of section 10(a)(2), the Board requires a charging party to show (1) that they were engaged in union or protected, concerted activity, (2) that their employer knew of such activity, (3) the employer's animus toward such activity, and (4) an adverse employment action. *Public Service Employees*

*Union Local 46, SEIU, AFL-CIO*, 7 PERI ¶ 3021 (ILLRB 1991). The employer's motive is a question of fact, and "the Board may infer discriminatory motive from either direct or circumstantial evidence." *Pace Suburban Bus Division of Regional Transportation Authority*, 406 Ill. App. 3d at 496-97. Factors to be considered when determining antiunion animus include the employer's expressed hostility toward union activity, the time of an adverse employment action in relation to the protected union activity, a pattern of the employer's conduct directed at union activity, shifting explanations for the employer's actions, and inconsistent reasons given by the employer for its actions against the employee when compared to other actions by the employer. *Id.* (citing *City of Burbank v. Illinois State Labor Relations Board*, 128 Ill. 2d 335, 346 (1989)).

¶ 18     Charges under either section 10(a)(1) or section10(a)(2) require a showing of an adverse employment action. While there is no single definition as to what constitutes an adverse employment action, the Board has found that there is no adverse employment action without some qualitative change in, or actual harm to, an employee's terms and conditions of employment. *Thompson*, 32 PERI ¶ 252 (ILRB Local Panel 2014). Here, Slater does not explicitly argue that access to the office space was a "term or condition" of his employment, but instead suggests that by denying access to the office, the CTA deprived the Union and Slater of the benefits of access to the office. The record contains evidence that, starting sometime in late 2014, the Union and Slater began using the office to hold confidential conversations, conduct union activities, and store Union materials in a filing cabinet. The record also contained evidence that the CTA's need for the office took priority over the Union's use of the office: Michael Morman, a CTA bus operator and Union member, testified that the CTA's need for the office had priority over the Union's access to it. It was undisputed that the CTA used the office to

9

select bus runs. Slater testified that the CTA never verbally promised that the office was the Union's office. There was no evidence presented that the use of the office was governed by any written agreement, nor was there any evidence that Union bargained with the CTA over the use of the office space. The Board heard undisputed testimony that the Union did not have a key to the office, and if the Union wanted to use the office, it had to get CTA management to unlock the office door. The Board determined that (1) the Union's and Slater's use of the office was temporary and permissive, (2) the office did not belong to the Union, (3) the Union and Slater did not have a key to the office, and (4) the Union and Slater did not have exclusive use of the office. In so finding, the Board considered whether the CTA's decision to deny the Union's access to the office was an adverse employment action for the purposes of an unfair labor charge under section 10(a)(1) and (a)(2). The Board could conclude, from the evidence presented, that use of the office was not a term or condition of Slater's employment. We see no error in the analytical framework that the Board applied to Slater's unfair labor charges.

¶ 19    Furthermore, the only authority cited by Slater in support of his argument that a "benefits to the bargaining unit" test is the proper analysis for his claim is *Amalgamated Transit Union, Local 241*, 30 PERI ¶ 9 (ILRB Local Panel 2013), in which the Board considered a union's unfair labor charge under section 10(a)(4) of the Act (5 ILCS 315/10(a)(4) (West 2012)). There, the union asserted that the CTA committed an unfair labor practice when it removed the union's access to an office that the union had used for over five years, and then refused the union's demand to bargain in good faith over the office, which the union contended was a condition of employment and thus a mandatory subject of bargaining. *Amalgamated Transit Union, Local 241*, 30 PERI ¶ 9. There was no dispute in that case, however, as to whether the office was a union office, and the Board upheld the ALJ's determination that the CTA's "decision to close the

office was a mandatory subject of bargaining because it significantly impaired the ability of the bargaining unit employees to confidentially communicate with [the union] concerning their terms and conditions of employment." *Id.* The specific question before the Board was whether the union had properly demanded that the CTA bargain over the office. *Id.* Here, Slater has not—and cannot, since the Union is the bargaining unit's exclusive representative—assert a failure to bargain under section 10(a)(4). To the extent that the Board applies a "benefits to the bargaining unit" test to determine whether an action is a mandatory subject of bargaining for the purposes of a union's section 10(a)(4) charge, Slater has failed to develop a persuasive argument that the same analysis should be applied to an individual's section 10(a)(1) and (a)(2) charges asserting an adverse employment action.

¶ 20    Next, Slater argues that the Board failed to properly examine his charge under section 10(a)(1) of the Act after it found that there was no adverse employment action. He relies solely on *Service Employees International Union, Local 73*, 28 PERI ¶ 35 (ILRB Gen. Counsel 2011), to argue that the test for determining whether a section 10(a)(1) violation has occurred is whether the employer's conduct, when viewed objectively from the standpoint of an employee, had a reasonable tendency to interfere with, restrain, or coerce employees in the exercise of the rights protected by the Act. We disagree with Slater that the Board was required to apply such a standard.

¶ 21    As we discussed above (*supra* ¶¶ 16-18), charges under either section 10(a)(1) or 10(a)(2) require some showing of an adverse employment action taken by the employer. Here, Slater's charge alleged that the CTA took an adverse employment action when it ended the Union's and his access to the office in retaliation for Slater's protected, concerted activity. It was therefore Slater's burden to show that the denial of the Union's and his access to the office was

11

an adverse employment action, which is a mixed question of law and fact that that Board resolved in favor of the CTA. Slater does not direct our attention to any authority supporting his argument that the Board, having found no adverse employment action, should have continued to evaluate his claim by examining whether an "objective, reasonable worker" would view the CTA's conduct as an interference with protected activity. His singular reliance on *Service Employees International Union, Local 73*, a nonprecedential order that is binding only on the parties to that case, is misplaced. There, the Board's general counsel opined that the ALJ's recommended decision and order was binding on the parties because neither party filed any exceptions with the Board from the ALJ's recommended decision and order, and the Board declined to review the matter on its own motion. In other words, the parties to that case were bound by the ALJ's recommended decision and order because no challenges were made to that order. Here, Slater makes no effort to explain the facts of *Service Employees International Union, Local 73*, or offer any cogent argument supported by authority as to why his proposed standard should be applied to situation before us.

¶ 22    A cursory review of the Board's precedent shows that the Board applies an "objective, reasonable employee" standard to unfair labor charges where the charging party alleges that an employer threatened employees with adverse employment actions for engaging in protected activity. Such a standard makes sense in that context, since an examination of the charge requires examining whether a reasonable employee would anticipate adverse consequences for engaging in protected activity in light of the employer's threat, *i.e.*, that there was a real likelihood of reprisals. *Amalgamated Transit Union, Local 241*, 20 PERI ¶ 80; *Illinois Fraternal Order of Police Labor Council*, 22 PERI ¶ 23. Here, Slater's unfair labor charges were based on the CTA's actions against him with respect to the office, and were not based on allegations that the

CTA threatened reprisals against Slater. In other words, having alleged an *action* taken by the CTA as opposed to the *threat* of an action, Slater was required to make a showing that the CTA's conduct was adverse to him. Therefore, we do not find that the Board was required to apply an objective, reasonable employee standard to Slater's unfair labor charges after it concluded that the CTA did not take an adverse employment action against Slater.

¶ 23    Next, Slater argues that the Board's final decision violates the requirement that the Board enter a decision consistent with the record and applicable law. See 80 Ill. Adm. Code 1200.135(b)(4) (2014) ("The Board may adopt all, part or none of the [ALJ's] recommended decision and order depending on the extent to which it is consistent with the record and applicable law."). He contends that the Board's application of a "proprietary interest" test to determine whether an adverse employment action occurred is inconsistent with the Act, and that the Board's decision "ignored the record" as to whether the office was a benefit to the bargaining unit. For the reasons discussed above, Slater's argument lacks merit. The Board did not err by examining whether Slater's or the Union's use of the office was a condition of employment for the purposes of determining whether an adverse employment action had occurred, and Slater did not demonstrate that the Board applies a "benefits to the bargaining unit" test to determine whether an employer's action constitutes an adverse employment action for the purposes of an unfair labor charge under section 10(a)(1) or (a)(2). Furthermore, there were facts in the record to support the Board's conclusion that the office was the CTA's property and not a union office, and thus the CTA's termination of the Union's and Slater's permissive access to the office was not an adverse employment action. We conclude that the Board's final decision was consistent with the record and applicable law.

¶ 24    Finally, Slater argues

> "If this Court determines that the [Board's] Order made a determination of fact rather than an application of law, in holding that the eviction of Mr. Slater and [the Union] from the North Park Bus Garage union office was not an adverse employment action, then reversal of the [Board's] Order must be entered as the conclusion that the union office eviction is clear and evident in the record."

¶ 25    It is not altogether clear what Slater means. Whether a particular action violates section 10(a)(1) or (a)(2) depends on the legal effect of a given set of facts, which presents a mixed question of law and fact that is reviewed for clear error. *AFM Messenger Service*, 198 Ill. 2d at 391. The parties agree that the Union and Slater were no longer permitted to use the office after the CTA revoked the Union's and Slater's permissive use, and therefore the question before the Board was whether the CTA's conduct amounted to an unfair labor practice under section 10(a)(1) and (a)(2) of the Act. Slater's appellate brief concedes that the Board's determination of mixed questions of fact and law are upheld if " 'reasonable, consistent with labor law[,] and based on findings supported by substantial evidence.' " *City of Tuscola v. Illinois Labor Relations Board*, 314 Ill. App. 3d 731, 734 (2002) (quoting *Northwest Mosquito Abatement District v. Illinois State Labor Relations Board*, 303 Ill. App. 3d 735, 741 (1999)). We have already determined that the Board did not commit any error in analyzing Slater's unfair labor charge, and that the Board reached its conclusion based on facts supported by the record. While there are facts in record to support Slater's contention that the Union and he were obviously deprived of the benefits of using the office after they were no longer permitted to use it, there were also facts in the record to support the Board's conclusion that the revocation of access to the office was not adverse to the Union or Slater: the Union had never bargained with the CTA

for use of the office, the Union did not have a key to the office, the Union's use of the office was temporary and permissive, and the Union's use of the office was subordinate to the needs of the CTA. It is not our function to reweigh the evidence. *Abrahamson*, 153 Ill. 2d at 88. As we have not been presented with any argument that leaves us with a firm conviction that an error has occurred, we affirm the final decision of the Board.

¶ 26                                   III. CONCLUSION

¶ 27    For the foregoing reasons, the decision of the Illinois Labor Relations Board is affirmed.

¶ 28    Board decision affirmed.