NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200417-U

NO. 4-20-0417

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 26, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| CITY OF MATTOON, | ) | Direct review of |
| Petitioner, | ) | Order of the Illinois Labor |
| v. | ) | Relations Board, State Panel |
| ILLINOIS LABOR RELATIONS BOARD, STATE | ) | No. S-CA-18-138 |
| PANEL, and MATTOON FIREFIGHTERS | ) | |
| ASSOCIATION, LOCAL 691, | ) | |
| Respondents. | ) | |
| | ) | |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The Illinois Labor Relations Board's decision (1) that the City of Mattoon engaged in unfair labor practices under the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2016)) was not precluded by collateral estoppel, (2) not to defer to an arbitration award was not clearly erroneous, and (3) that the City of Mattoon engaged in an unfair labor practice when it unilaterally changed the terms and conditions of employment by transferring bargaining unit work out of the bargaining unit without bargaining to impasse or submitting the issue to interest arbitration was not clearly erroneous.

¶ 2    Petitioner, the City of Mattoon (City), seeks administrative review of a decision of the Illinois Labor Relations Board, State Panel (Board). The Board found the City engaged in an unfair labor practice against the Mattoon Firefighters Association, Local 691 (Union) and violated sections 10(a)(1) and 10(a)(4) of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/10(a)(1), (4) (West 2016)) when it (1) eliminated ambulance services and used private companies with employees unqualified for appointment to the Mattoon Fire Department

(Department) under section 10-2.1-4 of the Illinois Municipal Code (hereinafter the Substitutes Act) (65 ILCS 5/10-2.1-4 (West 2018)); (2) transferred bargaining unit work without the Union's approval and without bargaining the transfer to impasse and submitting the issue to interest arbitration; and (3) altered the status quo while interest arbitration was underway.

¶ 3    On review, the City argues the Board erred in finding it violated the Act because (1) collateral estoppel barred the Union from relitigating whether the elimination of the City's ambulance service resulted in a transfer of the firefighters' bargaining unit work to nonqualified substitutes, (2) the Board's refusal to dismiss the unfair labor practice charge was clearly erroneous, and (3) the City did not commit an unfair labor practice when it eliminated ambulance services because the decision (a) did not concern a permissive subject of bargaining or make a unilateral change to a mandatory subject of bargaining and (b) was not a unilateral change to the status quo.  We affirm.

¶ 4                                I. BACKGROUND

¶ 5                            A. Ambulance Services

¶ 6    Prior to 2010, all ambulance services for the City were provided by private companies.  From 2010 to 2018, the Department and two private ambulance companies operated ambulance services on a three-week rotation with primary, secondary, and tertiary responsibilities alternating every week.  During this time, approximately 76% of the calls the Department responded to were medical.

¶ 7                        B. Collective Bargaining Agreement

¶ 8    The City and the Union are parties to a collective bargaining agreement (CBA) executed on May 1, 2014.  The CBA was set to expire on April 30, 2018, but remains in effect in the absence of a successor CBA.  In pertinent part, the CBA provides that the parties shall follow

section 10-2.1-4 of the Illinois Municipal Code (65 ILCS 5/10-2.1-4 (West 2016)), referred to by the parties as the Substitutes Act. Pursuant to the CBA, the City must bargain the transfer of bargaining unit work outside of the unit prior to the transfer. In pertinent part, the Substitutes Act provides as follows:

> "In any municipal fire department that employs full-time firefighters and is subject to a collective bargaining agreement, a person who has not qualified for regular appointment under the provisions of this Division 2.1 shall not be used as a temporary or permanent substitute for classified members of a municipality's fire department or for regular appointment as a classified member of a municipality's fire department unless mutually agreed to by the employee's certified bargaining agent. Such agreement shall be considered a permissive subject of bargaining." 65 ILCS 5/10-2.1-4 (West 2018).

¶ 9 The CBA set minimum staffing levels, individual shifts, and apparatuses for the Department. The CBA incorporated the City's Code of Ordinances, which at the time the CBA took effect, stated the Department "shall" provide ambulance services.

¶ 10 C. 2017 Resolution to Eliminate Ambulance Services

¶ 11 Between May and July 2017, City administrator, Kyle Gill, and Union president and member, Bartley Owen, discussed the City's finances and the possibility of eliminating the Department's ambulance services. Gill testified the Union was unwilling to agree to eliminate the ambulance services and took the position that the City should comply with the existing CBA.

- 3 -

¶ 12        On July 18, 2017, the city council adopted a resolution approving the elimination of city-operated ambulance services effective May 1, 2018.  According to Owen, he learned of the resolution less than a week before its adoption and the City did not provide the Union with an opportunity to bargain.

¶ 13                                    1. *Grievance Proceedings*

¶ 14        The day after the city council adopted the resolution to eliminate ambulance services, the Union filed a grievance alleging the resolution violated the CBA provisions incorporating the Substitutes Act and requiring the City to bargain the transfer of bargaining unit work.  The City administrator denied the grievance and determined the City did not violate the CBA because the resolution would not be implemented until after the expiration of the CBA, and the City intended to bargain the transfer of bargaining unit work before that time.

¶ 15        During the grievance arbitration hearing, the parties agreed the issues before the arbitrator were "[w]hether the city violated the [CBA] when it passed an ordinance on or about July 18, 2017 eliminating paramedic service[,]" and, if so, the appropriate remedy.  On April 18, 2018, the arbitrator issued an award in favor of the City, which the parties refer to as the "Fitzsimmons award."  The arbitrator described the issue as whether the City "violate[d] the [c]ontract when it adopted [r]esolution No. 2017-2997 on July 18, 2017[,] eliminating the ambulance services effective May 1, 2018."  The arbitrator identified the determinative question as "whether the Substitutes Act which is incorporated into the [c]ontract herein prevents the [e]mployer from eliminating the City-operated ambulance service."  Ultimately, the arbitrator concluded the Substitutes Act did not prevent the City from eliminating ambulance services, it only prevented the City "from hiring persons 'not qualified' for regular appointment."  The arbitrator noted the City did not intend to hire unqualified replacements to provide those

services.  In conclusion, he determined, "The Substitutes Act only prevents [e]mployers from using unqualified personnel outside the bargaining unit as temporary or permanent substitutes for bargaining unit firefighters."

¶ 16        The Union submitted a request for clarification, asking whether the arbitrator held the Substitutes Act prevented the City from "hiring" unqualified substitutes or from "using" them.  The request for clarification was denied.  On March 12, 2019, the circuit court of Coles County granted the City's petition to confirm the award.

¶ 17                              2. *Board Proceedings*

¶ 18        In January 2018, while arbitration proceedings were underway, the Union filed an unfair labor practice charge with the Board, alleging the City violated sections 10(a)(1) and 10(a)(4) of the Act by passing the July 2017 resolution to eliminate ambulance services "without notice or bargaining with the Union."  On April 30, 2018, the charge was dismissed, concluding the charge concerned the same conduct addressed in the arbitrator's award.  The executive director interpreted the charge as alleging the elimination of ambulance services was a permissive subject of bargaining under the Substitutes Act and reasoned that the arbitrator's finding that the Substitutes Act did not prohibit the City from eliminating ambulance services demonstrated "the resolution was not a permissive, but mandatory, subject of bargaining." Finally, the executive director noted the arbitrator's award "allow[ed] for impact bargaining" over the implementation of the resolution.  The Union appealed the dismissal, and the Board affirmed for the reasons stated in the dismissal order.

¶ 19                      D. Negotiations following the 2017 Resolution

¶ 20        In November and December 2017, Owen and Gill exchanged e-mails about negotiations on a successor CBA to the CBA set to expire April 30, 2018.  Owen suggested

postponing negotiations until the Union's grievances against the City were resolved. Gill replied that negotiations should commence because the elimination of ambulance services would cause work to transfer outside the bargaining unit, which was a matter that must be bargained.

¶ 21       In December 2017, the City sent the Union proposed modifications to the CBA derived from the July 2017 resolution and offered to meet and confer "for the purpose of negotiating a new contract and to address and bargain the impact of the proposed modifications." The proposed modifications included eliminating ambulance services and reducing minimum staffing from 30 to 18 department-wide and from 8 to 4 individuals per shift. In contrast, the Union proposed maintaining ambulance services and increasing minimum staffing.

¶ 22       In February 2018, the parties informed the Board they had not reached an agreement on a successor CBA and invoked interest arbitration procedures under section 14 of the Act (5 ILCS 315/14 (West 2018)) by requesting mediation. Between January and June 2018, the parties met numerous times and exchanged proposals but failed to reach an agreement. With one exception, all the City's proposals called for eliminating ambulance services. All the Union's proposals called for retaining ambulance services.

¶ 23       During negotiations, the parties disagreed about whether they were bargaining the impact of the 2017 resolution, negotiating a successor CBA, or both. The City asserted the parties were exchanging global packages covering the impact of the resolution and a successor CBA and resolving all outstanding grievances. The Union asserted the City's proposals were for a successor CBA and the City frustrated the Union's attempts at impact bargaining by failing to respond to requests for information about how it planned to operate under the existing CBA after ambulance services were eliminated.

¶ 24        During a May 4, 2018, meeting, the City informed the Union it planned to eliminate ambulance services within the next 60 to 90 days. Shortly thereafter, the Union sent the City a letter stating the City lacked the authority to use unqualified substitutes, the City had to bargain the impact of the decision to eliminate ambulance services even if it had the authority to do so, and demanded the City cease and desist from implementing its plan to eliminate ambulance services before impact bargaining was exhausted. In its response, the City stated it had the authority to eliminate ambulance services under the arbitrator's award and the Union refused its offers to engage in impact bargaining. The parties scheduled an impact bargaining meeting in June 2018 but failed to reach an agreement and canceled the next meeting due to an impasse on what impact bargaining entailed.

¶ 25        The Board's general counsel filed a declaratory ruling in connection with the ongoing contract negotiations. General counsel determined the City's proposal to eliminate ambulance services in the successor CBA was a permissive subject of bargaining because it sought the waiver of the Union's right under the Substitutes Act to insist the City use only individuals who are qualified for regular appointment as substitutes for firefighters in the performance of paramedic work. General counsel rejected the City's argument that the Substitutes Act applied only to internal hiring practices and not to the City's use of private contractors. Specifically, general counsel concluded the Substitutes Act was unambiguous because it included the word "use" instead of "hire" when it placed restrictions on who may perform work as a substitute for a full-time firefighter. "The plain meaning of the word 'use' denotes the means of accomplishing a certain result and is broader than the word 'hire,' which refers to an employment relationship." General counsel denied the City's motion to reconsider her declaratory ruling.

¶ 26                            E. 2018 Elimination of Ambulance Services

¶ 27          On June 21, 2018, the City informed the bargaining unit members that ambulance services would terminate on July 25.  On July 11, 2018, the city council approved ordinance amendments allowing for ambulance services to be provided solely by private companies.  On July 25, 2018, the Department stopped providing ambulance services, and the two private companies took over the three-week rotation.  While the private companies' employees were licensed emergency medical technicians (EMT), they were not on the City's firefighter eligibility list.  All bargaining unit members have maintained their EMT licenses because they still provide emergency medical services in some circumstances.  The bargaining unit members continued to receive the same wages, benefits, and overtime opportunities as before.

¶ 28                                  1. *Board Proceedings*

¶ 29          On May 8, 2018, the Union filed an unfair labor practice charge with the Board, alleging the City violated sections 10(a)(1), 10(a)(4), and 14(l) of the Act (5 ILCS 315/10(a)(1), (4), 14(l) (West 2018)) when it advised the Union on May 4, 2018, it would eliminate ambulance services within the next 60 to 90 days.  On June 25, 2018, the Union amended the charge to include the announcement that ambulance services would terminate on July 25, 2018.  The Union asserted the City unilaterally changed the status quo while negotiations on a successor CBA and interest arbitration were ongoing.

¶ 30          The City moved to defer resolution of the charge to arbitration, noting the Union filed two grievances regarding the elimination of ambulance services.  The grievances were denied and advanced to arbitration in July 2018.  The Union asserted deferral of the charge to arbitration was inappropriate because the charge raised statutory issues, not contract issues, that would not be resolved in arbitration.

¶ 31    On November 1, 2018, the executive director issued a complaint for hearing, effectively denying the City's deferral motion. The complaint alleged "[t]he elimination of ambulance services concerns wages, hours, and terms and conditions of employment and is a mandatory subject of bargaining." The complaint further alleged the City's unilateral implementation of the elimination of ambulance services without first bargaining the impact of the decision to impasse violated sections 10(a)(4) and 10(a)(1) of the Act.

¶ 32    The Union filed a motion to amend the complaint to include allegations it claimed to have included in the charge but were omitted from the complaint. Specifically, the Union sought to amend the complaint to allege the City failed to bargain the decision to eliminate ambulance services, as well as its impact, and the City also violated section 14(l) of the Act by altering the status quo during interest arbitration. The administrative law judge (ALJ) deferred ruling on the motion to amend the complaint until he issued a decision because the argument was a matter of law and would not affect the hearing.

¶ 33    In May 2019, after the circuit court confirmed the Fitzsimmons award, the City filed a motion asking the Board to defer to the award and dismiss the Union's charge. The City argued deferral was warranted because the Fitzsimmons award determined the City could eliminate ambulance services without violating the Substitutes Act and the Union was collaterally estopped from relitigating that issue. The City asserted that, because the arbitrator "found that adoption of the resolution seeking to eliminate ambulance services was a valid exercise of the City's rights pursuant to the CBA, the resolution's later implementation by the City was similarly justified and permitted."

¶ 34    The Union asserted the motion to defer was untimely because it was filed months after the executive director issued the complaint and the deferral was improper because the

Fitzsimmons award did not reach the factual and statutory issues alleged in the charge. The Union argued the Fitzsimmons award concerned the July 2017 resolution and decided the contractual question of whether its adoption violated the CBA, while the charge alleged the City violated its statutory obligations when it later eliminated ambulance services.

¶ 35 The ALJ reserved ruling on the deferral motion until issuing the recommended decision and order (RDO). The ALJ conducted a hearing on the complaint and heard testimony from Union president Owen, Union secretary Dustin Rhoads, Union attorney Margaret Angelucci, and City administrator Gill. Both parties filed posthearing briefs.

¶ 36 The Union argued the City violated the Act when it eliminated ambulance services because the transfer of that bargaining unit work was a permissive subject of bargaining under the Substitutes Act. The Union also argued that, even if the City's elimination of ambulance services was a mandatory subject of bargaining, the City violated its duty to bargain and submit to interest arbitration when it unilaterally implemented the change. The Union asserted the City unlawfully altered the status quo by unilaterally implementing the elimination of ambulance services and using persons not qualified for regular appointment as substitutes while interest arbitration on a successor CBA was ongoing. Finally, the Union argued the City failed to bargain in good faith over the impact of its decision to eliminate services. The Union reasserted its motion to amend the complaint to reflect its allegations that the City made a unilateral change to a permissive subject of bargaining and altered the status quo in violation of section 14(l) of the Act. The Union asserted there was no basis to defer to the Fitzsimmons award because it concerned only contractual issues regarding the July 2017 resolution.

¶ 37 The City argued the ALJ should defer to the Fitzsimmons award because the arbitrator decided the same issue regarding the City's authority to eliminate ambulance services

raised in the complaint and the Union was collaterally estopped from relitigating that issue. The City asserted the Substitutes Act was inapplicable where it did not hire any substitutes but sought to eliminate ambulance services entirely. The City argued the Union refused its attempts to bargain the impact of the elimination of ambulance services and its unilateral elimination of those services did not alter the status quo which was established by the Fitzsimmons award.

¶ 38        The ALJ issued an RDO amending the complaint to include an allegation that the City violated section 14(l) of the Act by altering the status quo, but otherwise denying the motion to amend and recommending dismissal of the complaint. The ALJ determined the Board adjudicated the Union's claim when it dismissed the charge on the July 2017 resolution in deference to the Fitzsimmons award. The ALJ also determined the City did not alter the status quo when it eliminated ambulance services because the Fitzsimmons award established the status quo, meaning the City was not required to bargain inevitable consequences of the decision, and the Union had the opportunity to bargain the impact of the decision.

¶ 39        The Union filed exceptions to the RDO, asserting the Board did not adjudicate the Union's claims when it dismissed the previous charge because it addressed only the July 2017 resolution and not the subsequent transfer of work out of the bargaining unit. The Union also asserted the City violated section 14(l) of the Act because the status quo provided for ambulance services under the existing CBA. The Union argued the City failed to bargain the impact of its decision to eliminate services where the City failed to respond to Union requests for proposals on the impact of the City's decision and the City only provided proposals for a successor CBA. The City reasserted its previous arguments, and the parties requested oral argument before the Board.

¶ 40                            2. *Board Decision*

¶ 41        Ultimately, the Board issued a final decision and order adopting the ALJ's factual findings but rejecting most of the recommendations.  The Board concluded the City violated sections 10(a)(1), 10(a)(4), and 14(l) of the Act.  The Board granted the Union's motion to amend the complaint in its entirety, stating its dismissal of the Union's prior charge regarding the July 2017 resolution did not control.  The Board noted the prior charge concerned only the adoption of the July 2017 resolution, whereas the present charge concerned alleged violations of the Act when the City eliminated ambulance services and used private companies, who were not qualified for appointment to the Department under the Substitutes Act, to perform ambulance services in place of the bargaining unit members.

¶ 42        The Board held the City violated the Act when it unilaterally eliminated ambulance services in 2018, noting that even if the elimination of services, by itself, was not improper, the resultant transfer of bargaining unit work was improper.  The Board concluded the City had to get the Union's approval before transferring that work because that approval was a permissive subject of bargaining under the Substitutes Act.  The Board rejected the City's argument that the Substitutes Act applied only to the hiring of unqualified substitutes, where the plain language "utilizes the word 'use' rather than the word 'hire' when it places restrictions on who may perform work as a substitute for a full-time firefighter."  The Board further concluded that, even if the Substitutes Act did not apply, the City was required to bargain the transfer to impasse and submit the issue to interest arbitration because it changed the terms and conditions of the firefighters' employment and was, therefore, a mandatory subject of bargaining.  In coming to this conclusion, the Board stated, "Even if, as the ALJ found, the City engaged in impact bargaining, simply engaging in bargaining is not sufficient in this case for impact bargaining remains a mandatory subject, and the obligation to bargain also requires bargaining to

- 12 -

impasse before implementation." Finally, the Board held the City improperly altered the status quo while interest arbitration was underway, again noting the Fitzsimmons award controlled only as to the July 2017 resolution and not the subsequent transfer of work to unqualified substitutes. The City petitioned for judicial review of the Board's final decision and order.

¶ 43                                    II. ANALYSIS

¶ 44         On review, the City argues the Board erred in finding it violated the Act because (1) collateral estoppel barred the Union from relitigating whether the elimination of the City's ambulance service resulted in a transfer of the firefighters' bargaining unit work to nonqualified substitutes, (2) the Board's refusal to dismiss the unfair labor practice charge was clearly erroneous, and (3) the City did not commit an unfair labor practice when it eliminated ambulance services because the decision (a) did not concern a permissive subject of bargaining or make a unilateral change to a mandatory subject of bargaining and (b) was not a unilateral change to the status quo.

¶ 45                              A. The Board's Decision

¶ 46         Section 10(a)(4) of the Act provides:

"(a) It shall be an unfair labor practice for an employer or its

agents:

* * *

(4) to refuse to bargain collectively in good faith with a labor

organization which is the exclusive representative of public

employees in an appropriate unit, including, but not limited to, the

discussing of grievances with the exclusive representative." 5

ILCS 315/10(a)(4) (West 2018).

The Act imposes a duty on a public employer to engage in good-faith collective bargaining with its employees' representative under certain circumstances. Public employers and employee representatives share a statutory duty "to negotiate in good faith with respect to wages, hours, and other conditions of employment." 5 ILCS 315/7 (West 2018). Employers are not required to bargain over matters of inherent managerial policy, but they must bargain over "policy matters directly affecting wages, hours[,] and terms and conditions of employment as well as the impact thereon." 5 ILCS 315/4 (West 2018)). "A public employer commits an unfair labor practice and violates section 10(a)(4) of the Act when it refuses to bargain in good faith with a labor organization that is the exclusive representative of a bargaining unit of public employees." *County of Cook v. Illinois Labor Relations Board, Local Panel*, 2017 IL App (1st) 153015, ¶ 42, 70 N.E.3d 795. When a public employer breaches its obligation to bargain pursuant to section 10(a)(4), it also violates section 10(a)(1), which prohibits an employer from interfering with an employee's exercise of their rights under the Act. *Id.* The duty to bargain extends to issues that arise during the term of a CBA. *Id.*

¶ 47 While parties are required to negotiate in good faith over mandatory subjects of bargaining, they are not required to reach an agreement or make concessions on those topics. *Wheaton Firefighters Union, Local 3706 v. Illinois Labor Relations Board*, State Panel, 2016 IL App (2d) 160105, ¶ 16, 58 N.E.3d 161. If an agreement cannot be reached on a mandatory subject of bargaining, the matter is referred to interest arbitration. *Skokie Firefighters Union, Local 3033 v. Illinois Labor Relations Board, State Panel*, 2016 IL App (1st) 152478, ¶ 6, 74 N.E.3d 1023. Section 14(l) of the Act requires both parties to maintain the status quo during interest arbitration, and an employer commits an unfair labor practice when it alters the status quo as to a term or condition of employment while interest arbitration remains ongoing. *Village*

- 14 -

*of North Riverside v. Illinois Labor Relations Board, State Panel*, 2017 IL App (1st) 162251, ¶¶ 23-25, 37, 87 N.E.3d 394.

¶ 48 "Matters that do not fall within the definition of mandatory subjects of bargaining are permissive subjects of bargaining. [Citation.] Permissive subjects of bargaining include matters that the union has the right to insist on, such as the recognition of statutory rights." *Wheaton*, 2016 IL App (2d) 160105, ¶ 17. "A party cannot insist on bargaining over a permissive subject to the point of impasse. [Citation.] Absent an agreement to the contrary, permissive subjects of bargaining are not to be decided by the arbitrator." *Skokie*, 2016 IL App (1st) 152478, ¶ 15.

¶ 49 In this case, the Board determined the City committed an unfair labor practice on three grounds. First, it determined the City forced the Union to waive its rights under the Substitutes Act—which was a permissive bargaining subject—by using unqualified substitutes to provide ambulance services without the Union's agreement. Second, the Board determined the transfer of work outside of the bargaining unit would have been a mandatory subject of bargaining if the Substitutes Act did not apply and the City unilaterally changed that condition of employment under the CBA without bargaining to impasse or submitting to interest arbitration. Third, the Board determined the City altered the status quo as to a term or condition of employment while interest arbitration was ongoing in violation of section 14(l) of the Act.

¶ 50 B. Standard of Review

¶ 51 A party aggrieved by the Board's final order may seek judicial review in the appellate court. See 5 ILCS 315/11(e) (West 2018); 735 ILCS 5/3-101 *et seq.* (West 2018). In appeals from a Board decision, our standard of review depends on whether an issue involves a question of law, fact, or a mixed question of law and fact. *Slater v. Illinois Labor Relations*

*Board, Local Panel*, 2019 IL App (1st) 181007, ¶ 13, 144 N.E.3d 618.  This court reviews the

Board's final decision and not the ALJ's recommended decision and order.  *Id.*  "The Board's

factual findings are *prima facie* true and correct and will not be disturbed unless the findings are

against the manifest weight of the evidence.  [Citation.]  It is not our function to reweigh the

evidence or make any independent determinations on issues of fact."  *Id.*  We review *de novo*

conclusions of law and issues of statutory construction.  *Id.*  Whether the doctrine of collateral

estoppel applies is a question of law reviewed *de novo*.  *State Building Venture v. O'Donnell*,

239 Ill. 2d 151, 158, 940 N.E.2d 1122, 1127 (2010).

¶ 52            "We review mixed questions of law and fact under the clearly erroneous

standard."  *Slater*, 2019 IL App (1st) 181007, ¶ 13.  "[A] mixed question is one 'in which the

historical facts are admitted or established, the rule of law is undisputed, and the issue is whether

the facts satisfy the statutory standard, or *** whether the rule of law as applied to the

established facts is or is not violated.' "  *AFM Messenger Service, Inc. v. Department of*

*Employment Security*, 198 Ill. 2d 380, 391, 763 N.E.2d 272, 279 (2001) (quoting

*Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)).  The clearly erroneous standard falls

between a manifest weight standard and a *de novo* standard to provide some deference to the

Board's decision.  *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205,

692 N.E.2d 295, 302 (1998).

¶ 53            We will review the Board's decision that collateral estoppel does not apply

*de novo*.  We review the Board's decision not to defer to the Fitzsimmons award and its

determination the City committed an unfair labor practice for clear error.

¶ 54                              C. Collateral Estoppel

¶ 55            Collateral estoppel is an equitable doctrine that prevents the relitigation of issues resolved in earlier actions. *DuPage Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77, 744 N.E.2d 845, 849 (2001). Once a court decides an issue of fact or law necessary to its judgment, the decision is conclusive in a subsequent action involving the party to the prior litigation. *Id.* at 78. Collateral estoppel applies only when the issue decided in the prior action is identical to the issue raised in the current action. There must have been a final judgment on the merits in the prior action and the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the prior action. *Id.* at 79. As a general rule, arbitration awards have the same collateral estoppel effect as court judgments. *Taylor v. People's Gas Light & Coke Co.*, 275 Ill. App. 3d 655, 661, 656 N.E.2d 134, 139 (1995).

¶ 56            Application of the collateral estoppel doctrine "must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390-91, 757 N.E.2d 471, 478 (2001). " 'It is well-settled that in order for a previous adjudication to be conclusive, it must appear clearly and certainly that the identical and precise issue was decided in the former action.' " *American Family Mutual Insurance Co. v. Westfield Insurance Co.*, 2011 IL App (4th) 110088, ¶ 18, 962 N.E.2d 993 (quoting *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 895, 318 N.E.2d 315, 325 (1974)). Collateral estoppel is inapplicable when there is uncertainty about whether the issues presented in the prior and current proceedings are identical. *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 39, 131 N.E.3d 1181. "The party asserting estoppel bears the heavy burden of showing with certainty that the identical and precise issue sought to be precluded in the later adjudication was decided in the previous adjudication." *Id.*

¶ 57    The determinative question in this case is whether the issue decided in the Fitzsimmons award is the identical and precise issue presented in this case. The City argues the arbitrator and the Board decided the same issue about the City's compliance with the Substitutes Act, asserting the Fitzsimmons award and the Board's decision addressed the same conduct and resolved the same legal issue.

¶ 58    We conclude the Board correctly determined the issue of whether the City violated the CBA through its adoption of the July 2017 resolution to eliminate ambulance services at some point in the future was not identical to the issue of whether the City committed an unfair labor practice through its actual elimination of ambulance services and transfer of bargaining unit work in 2018. Whether the City may generally eliminate ambulance services is a distinct issue from whether the City may eliminate services by transferring bargaining unit work to unqualified substitutes without a union's agreement. Although the Fitzsimmons award determined the City's adoption of a resolution to eliminate ambulance services did not violate the CBA or the Act, it did not address the City's implementation of the resolution by unilaterally transferring bargaining work. The Fitzsimmons award could not have addressed the implementation because the transfer of bargaining work occurred after the Fitzsimmons award was issued.

¶ 59    Moreover, the Fitzsimmons award did not clearly decide the issue before the Board. In the Fitzsimmons award, the arbitrator stated the Substitutes Act did not prevent the City from eliminating ambulance services, it only prevented the City "from hiring persons 'not qualified' for regular appointment." The arbitrator noted the City did not intend to hire unqualified replacements to provide those services. In conclusion, he stated, "The Substitutes Act only prevents [e]mployers from using unqualified personnel outside the bargaining unit as

- 18 -

temporary or permanent substitutes for bargaining unit firefighters." The Union submitted a request for clarification, asking whether the arbitrator held the Substitutes Act prevented the City from "hiring" unqualified substitutes or from "using" them. That request was denied. Given the absence of clarification, we cannot say the issue of whether the City could use, but not hire, unqualified substitutes when it implemented the elimination of ambulance services was clearly decided. See *Nowak*, 197 Ill. 2d at 390-91 (stating collateral estoppel "must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment"). Accordingly, we conclude the City has failed to meet its "heavy burden of showing with certainty that the identical and precise issue" in the current case was previously litigated and decided in the Fitzsimmons award. *Ivy*, 2019 IL App (1st) 181691, ¶ 39.

¶ 60                    D. The Board's Decision Not to Defer to the Arbitration Award

¶ 61            The City next argues the Board's refusal to dismiss the complaint was clearly erroneous. Specifically, the City argues the Board erroneously chose not to defer the resolution of the unfair labor practice charge to the Fitzsimmons award. The City asserts the Fitzsimmons award "decided the dispositive issue of whether the City's elimination of its ambulance service involved the use of non-qualified substitutes under the Substitutes Act." As discussed above, we review this issue for clear error.

¶ 62            When an unfair labor charge involves the interpretation of a CBA that provides for binding arbitration, the Board may defer resolution of the charge to arbitration. 5 ILCS 315/11(i) (West 2018). "[U]nder the *Spielberg* standard, it is proper for the Board to defer to an arbitration award where (1) the unfair labor practice issues have been presented to and considered by the arbitrator; (2) the arbitration proceedings appear to have been fair and regular; (3) all parties to the arbitration agreed to be bound by the award; and (4) the arbitration is not

- 19 -

clearly repugnant to the purposes and policies of the Act." *Moehring v. Illinois Labor Relations Board, State Panel*, 2013 IL App (2d) 120342, ¶ 11, 989 N.E.2d 1131 (citing *Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080 (1955)).

¶ 63        As discussed above, the unfair labor practice proceeding concerned issues not decided by the arbitrator. The Fitzsimmons award determined the City's adoption of the resolution to eliminate ambulance services and not the implementation of eliminating ambulance services by transferring bargaining unit work to unqualified substitutes. The arbitrator's conclusion that the Substitutes Act did not prevent the City from eliminating ambulance services did not resolve the question of whether the City could use unqualified substitutes to provide ambulance services previously performed by bargaining unit members without the Union's agreement.

¶ 64        The City argues the Board should have to deferred to the Fitzsimmons award for the same reasons it dismissed the Union's first unfair labor practice charge. However, the Board deferred to the Fitzsimmons award in dismissing the Union's first unfair labor practice charge because it involved the July 2017 resolution, which was the subject of the Fitzsimmons award. Here, the Board declined to defer to the Fitzsimmons award because the unfair labor practice charge involved the City's subsequent transfer of work out of the bargaining unit.

¶ 65                              E. Unfair Labor Practice

¶ 66        The Board determined (1) the City forced the Union to waive its rights under the Substitutes Act—which was a permissive bargaining subject—by using unqualified substitutes to provide ambulance services without the Union's agreement; (2) notwithstanding the Substitutes Act, the transfer of bargaining unit work outside of the bargaining unit was a mandatory subject of bargaining and the City unilaterally changed that condition of employment under the CBA

without bargaining to impasse or submitting to interest arbitration; and (3) the City altered the status quo as to a term or condition of employment while interest arbitration was ongoing in violation of section 14(l) of the Act.

¶ 67        The City argues it did not commit an unfair labor practice when it eliminated ambulance services because the decision (a) did not concern a permissive subject of bargaining or make a unilateral change to a mandatory subject of bargaining and (b) was not a unilateral change to the status quo. The Board argues the City has forfeited any challenge to the part of the Board's decision holding the City violated the Act by failing to bargain over a mandatory subject of bargaining by failing to address this issue in its brief. The Board acknowledges the City includes a statement in a heading in its brief that it did not cause a unilateral change to a mandatory subject of bargaining. The Board argues, however, that the City failed to develop any argument on these lines.

¶ 68        As the Board correctly points out, the City's opening brief contains a heading stating it did not cause a unilateral change to a mandatory subject of bargaining. The City asserts it did not forfeit this argument because, in the section discussing the Substitutes Act and permissive subjects of bargaining, it asserted the "Board did not contradict the ALJ's finding that the Union elected not to negotiate to secure concessions and reduce whatever effect the City's decision had on the bargaining unit." This does not amount to a fully developed argument. The argument section of an appellant's brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Additionally, "[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." *Id.* Here, the City failed to present a reasoned argument as to this issue, and we agree it has been forfeited.

¶ 69    Additionally, even if we were to set aside the City's forfeiture, we would find no merit to its claim.  The City asserts the "Board did not contradict the ALJ's finding that the Union elected not to negotiate to secure concessions and reduce whatever effect the City's decision had on the bargaining unit."  However, although the Board did not expressly reject the ALJ's factual finding, it clearly rejected the conclusion that the City met its obligation to negotiate in good faith on a mandatory bargaining subject.  The Board determined the City transferred bargaining unit work out of the bargaining unit without bargaining to impasse and submitting the issue to interest arbitration.  Moreover, the Board concluded that "[e]ven if, as the ALJ found, the City engaged in impact bargaining, simply engaging in bargaining is not sufficient in this case for impact bargaining remains a mandatory subject, and the obligation to bargain also requires bargaining to impasse before implementation."  The Board's conclusion that the City committed an unfair labor practice by implementing a change concerning a mandatory bargaining subject without bargaining to impasse was not clearly erroneous.

¶ 70                                    F. Motion to Strike

¶ 71    Next, we consider the City's motion to strike the *amicus curiae* brief of the Associated Fire Fighters of Illinois (AFFI).  The City argues the *amicus* brief is improper because it was (1) authored by the same law firm that represents the Union, (2) filed to circumvent the 50-page limit on the Union's brief, and (3) relies on matters outside the record. AFFI argues there is no Illinois Supreme Court Rule preventing attorneys from the same firm from representing both a party to the action and an *amicus curiae*.  AFFI further asserts it is a longtime client of the law firm and the attorney who authored the brief was not involved in any of the underlying litigation in this matter.  The City's reply again asserts the brief was filed to circumvent the page limits for briefs on appeal.  Having considered the City's motion, AFFI's

response, and the City's reply, we grant the motion to strike as to any material contained or referenced in AFFI's brief that are *dehors* the record.  See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 60, 514 N.E.2d 150, 167 (1987) (striking briefs of *amicus curiae* that relied on materials not part of the record on appeal).  Finally, we deny the request, in footnote 5 of appellant's reply brief, suggesting we strike portions of appellee, the Union's, brief.

¶ 72                                    III. CONCLUSION

¶ 73          For the reasons stated, we affirm the Board's judgment.

¶ 74          Affirmed.